### JULIA CADENA DE BARRERA V. T. C. FROST ET AL.

#### Decided May 24, 1905.

**1.—Receivership—Mortgage—Rents—Adequate Remedy.**

Where a mortgage contained an assignment of the rents to accrue after default, it was no objection to the appointment of a receiver on application of the mortgagee that an adequate remedy at law, by sequestration, existed, nor that the mortgage provided a remedy by giving notice to the tenants, nor that the mortgagee had not alleged that the property was probably insufficient to discharge the mortgage debt. Following rulings on former appeal, 33 Texas Civ. App., 580.

**2.—Same—Wife's Separate Estate—Rents.**

The community character of rents and revenues from the wife's separate estate is not changed by the fact that the husband has ceased to contribute to the collection thereof, or by the fact that a court has, through a receivership, deprived him of the statutory power to manage and control the property.

**3.—Same.**

That the court canceled the mortgage lien insofar as it affected the property itself, because it was the wife's separate property, did not defeat the right of the mortgagee to have a receiver for the rents, which were community.

**4.—Same—Limiting Period of Receivership.**

It was not error that the decree appointing the receiver did not in terms limit the receivership to such time as the marital relation might continue, since the court retains jurisdiction of all matters pertaining to the receivership and its continuance.

**5.—Surety—Extension of Time—Wife's Separate Property.**

The husband's right to manage and control does not authorize him to extend a debt of his secured by a mortgage on his wife's separate property without her consent, and where he does so her property is released.

**6.—Same—Mortgage Clause as to Extensions.**

A clause in a trust deed executed by a husband and wife on her separate property to secure his debt which provided that any extensions could be made in the payment of the debt, or any part of the security be released, without altering the lien in favor of a junior incumbrancer or purchaser, and that the latter should be bound by such extensions or release, contemplated only such incumbrancers or purchasers, and did not authorize the husband to extend the debt without the wife's consent and without her property being thereby released.

**7.—Same—Interest Paid in Advance.**

Where an extension, made without the surety's assent, is to a time certain, and it is agreed that the debtor shall then pay precisely the same sum as that due at the time of the extension, this resulting from the payment of interest in advance for the extended time, the surety is nevertheless released.

**8.—Same—Mortgage not Released in Part.**

Where the wife executed a mortgage on her separate property to secure the husband's note given for money, part of which had been applied to satisfy tax liens on that property and for other purposes for the benefit of her separate estate, the wife was not a surety as to such portions of the debt, and to that extent the lien was not released by the husband's extension of the debt without her assent.

Appeal from the District Court of Bexar. Tried below before Hon. A. W. Seeligson.

*Geo. C. Altgelt,* for appellant.

*Ball & Ingrum,* for appellees.—1.   Appellee Frost was a mortgagee out of possession, and was not entitled to and could not collect the rents and revenues from said property without actual possession, which possession was refused him by the mortgagors, and hence the court did not err in appointing a receiver.   McIlheny, Admr., v. Binz, 80 Texas, 17; Receiver v. Stanton, 86 Texas, 627; Heller v. National Marine Bank, 45 L. R. A., 445; New York S. & T. Co. v. S. G. & E. L. Co., 45 L. R. A., 132; Simpson v. Ferguson, 44 Pac. Rep., 484; Gilman v. Tel. Co., 91 U. S., 603, L. Ed., 405; Teal v. Walker, 111 U. S., 242, L. Ed., 418; Freedmans S. & T. Co. v. Shepherd, 127 U. S., 494, L. Ed., 186; 20 Am. and Eng. Ency. of Law (2d ed.), p. 1009; Smith on Receivers, sec. 172a, and authorities cited.

2.   The trial court did not err in refusing to limit the receivership to a specific time and in continuing the same subject to further orders and decrees of said court.   Barrera v. Frost, 77 S. W. Rep., 641; High on Receivers (2d ed.), sec. 835; 2 Bates' Federal Equity Procedure, sec. 616.

3.   So far as the appointment of the receiver is concerned, it is immaterial whether the corpus of the realty, being the separate property of the wife, has been released by the extension of the note; as the claim of appellee (defendants), and the judgment of the court continuing the receivership is based upon the special transfer and assignment of the rents.   Carr v. Tucker, 42 Texas, 330; Rine v. Blake, 59 Texas, 243; Hayden v. McMillan, 23 S. W. Rep., 430; Schepflin v. Small, 23 S. W. Rep., 432; Speer's Law of Married Women, sec. 188.

4.   To the extent that the consideration of a contract inures to the benefit of a married woman, she occupies the attitude of principal. Vogel v. Leichner, 102 Ind., 55, 1 N. E. Rep., 554; Nolan v. State, 115 Ind., 529.   Whether or not a wife is surety or principal is to be determined from whether or not she received the consideration in person or in benefit of her separate estate.   Grey v. Liberenz (Ind.), 65 N. E. Rep., 186; White v. Smith, 73 S. W. Rep., 610.

JAMES, CHIEF JUSTICE.—Appellant sued to cancel a deed of trust, alleging that she joined her husband Juan E. Barrera in the deed of trust on her separate property to secure T. C. Frost in the payment of a note due him by her husband, and claiming that her property was discharged by reason of four different extensions granted her husband without her knowledge or consent.   The defendants were T. C. Frost and J. T. Woodhull, the latter being the trustee.   Mr. Frost having died, his independent executrix became a party.

The defenses set up were various.   1. That there had been no extensions, but only indulgences.   2. If any extension, the same was at the instance of plaintiff through her agents, and the payments of interest were made out of plaintiff's funds with her knowledge and consent. 3.   That the extension, if any, was procured by plaintiff's husband who had the right to extend same without releasing plaintiff's property. 4. That by such extension, if any, the indebtedness was not augmented

or increased, in that the amount due at the expiration of the extension was exactly the amount previously due, and therefore there was no damage to plaintiff.   5. That by the terms of the deed of trust it was contemplated that the indebtedness could and might be extended by the husband.   6. That her husband was and is insolvent, and payment of the note could only be made out of the property of plaintiff, and therefore an extension did not affect the matter.   7. That $4,000 of the $5,000 note for which the deed of trust sought to be cancelled was given, was secured by previous deeds of trust on plaintiff's same property, and the husband being insolvent, the same being an incumbrance upon her property was her debt, and the novation or extension of such debt, merging it into the $5,000 note was for the benefit of and to protect plaintiff's property from foreclosure under said pre-existing deeds of trust, and the liens thereof were carried forward and defendant subrogated to the same, and therefore plaintiff was not in fact, as to $4,000 of the $5,000 note, a surety for her husband, but same was a first and primary charge against plaintiff's property; and that the additional amount making the note $5,000 (with exception of $3.44) was used to pay interest upon said previous $4,000 debt, and taxes upon said property, this making the entire debt plaintiff's debt except $3.44, and in truth and in fact the $5,000 mortgage was for the protection of plaintiff's property and for her own use and benefit.   8. That $1,500 of the amount included in said $5,000 note had been previously evidenced by two notes for $750 each, dated February 11, 1893, secured by a mortgage executed by plaintiff and her husband, which lien has been carried forward in all succeeding mortgages, and that plaintiff's husband then owned a half interest in said property, and afterwards, on June 18, 1894, he conveyed his interest to plaintiff and recited in the conveyance that it was subject to said deed of trust of February 11, 1893, and aside from any subrogation arising from said debt and lien being carried forward from time to time, plaintiff having acquired said interest subject to said debt, the property became charged therewith, and to that extent it was her separate debt and liability and the extension, if any, would not discharge the property, etc.   9. By way of cross-bill defendant interpleaded the husband and sought a foreclosure of the mortgage lien; and 10, defendant set up the transfer and assignment of the rents of the property contained in the deed of trust sought to be cancelled, alleging said rents to be community property, and prayed that in the event the property should be held to be released, that the receiver heretofore appointed herein be continued with authority to collect the rents and lease the property with such further powers as the court might see fit to give him from time to time.

On the trial the court gave decree for plaintiff cancelling the deed of trust so far as the property was concerned, gave judgment against Juan E. Barrera, her husband, for the amount due on the note, and continued the receivership on account of the rents, defining the receiver's powers and duties, and decreeing that the receivership and the receiver be subject at all times to the control and direction of the court until otherwise ordered, or until the said indebtedness be satisfied, etc.

Mrs. Barrera has appealed and complains of the action of the court concerning the receivership. Her propositions are: 1. The application for the appointment of a receiver was insufficient in law, because it was not shown that T. C. Frost did not have an adequate remedy at law, but, on the contrary, it appears from the application that there was an adequate remedy at law by suing out a writ of sequestration. This we have already considered and discussed on an appeal from the order appointing the receiver. Barrera v. Frost, 33 Texas Civ. App., 580, 77 S. W. Rep., 637. This disposes of the first, fifth and sixth assignments.

2. That the mortgage deed provided a remedy by giving notice to the tenants of the property, and such remedy was exclusive, and after giving notice Frost had an adequate remedy at law by suit against the tenants, it not being alleged that such tenants were insolvent or colluded with plaintiff. This was also disposed of in the opinion mentioned.

3. In order to entitle Frost to a receiver it was necessary that he should allege that the property whereon he claimed a mortgage was probably insufficient to discharge the debt, or allege in direct terms that this mortgage had been discharged or the property released from the mortgage by reason of the extension, so that he might rely solely upon his claim for a lien on the rents. So far as the temporary appointment of the receiver was concerned, that matter has been finally adjudicated. As to the final decree on the subject, the effect of the cancellation of the deed of trust was to release all the property there was from the lien, leaving Frost only the bare rents as security, and these rents, only for such uncertain time as the marital relation between plaintiff and Juan E. Barrera is not dissolved by death or otherwise, they being community property only during the existence of such relation. The right of defendant to a receiver in respect to the rents without the allegations contended for is sustained by reasons given on the former appeal, and we see no occasion to say more on the subject.

4. That the mortgage provided the remedy of giving notice to tenants of the property, which remedy was exclusive, and in addition to the reasons stated in the second proposition above, Frost had an adequate remedy at law by suit against the tenants, it not being alleged that the property is probably insufficient to pay the debt, and it not being alleged in direct terms that the mortgage had been discharged or said property released from its operation. By this last reason we take it is meant that defendant should have admitted that the property was discharged, and that defendant was not entitled to a receiver for the rents while contending that the mortgage on the property existed. We see no force in this reason. The seventh assignment of error under which this proposition is made is based on an overruled exception to the application for a temporary receiver, the matters relating to which were finally settled in the appeal from such appointment. The appeal now taken can affect only matters which concern the final decree.

Appellant's eighth and ninth assignments are that the court erred in appointing a receiver and authorizing him to take charge of the property and to rent same and collect the rents to the exclusion of

plaintiff, and in not rendering an unqualified judgment for plaintiff cancelling the deed of trust. Appellant's view, as expressed in a proposition, is that after the husband ceased to contribute to the collection of the rents and after he was deprived by the court of his statutory power to manage the property in question, the rents became her separate property. Also that the rents are her separate property and can not be subject to her husband's debts against her will while her husband contributes nothing to the earning and collection of such rents. We think it useless to discuss these propositions. The community character of rents and revenues derived from the wife's separate estate has become settled in this State, and the rule is not affected by such contingencies. The relation between husband and wife may be such as to enlarge her powers, or restrict his, over their community property, but the nature of the property itself remains the same during marriage. We therefore, overrule the assignments.

The eleventh and twelfth assignments of appellant complain of the decree in not in terms limiting the receivership to the period during which the marriage relation might continue between plaintiff and her husband. There are other contingencies that would require the termination of the receivership before the dissolution of such relation. The court retained jurisdiction of all matters pertaining to the receivership and its continuance, and it was not necessary to forestall and provide in the decree the time limit of the receivership.

Under the tenth assignment it is insisted that after the cancellation of the deed of trust there was no basis for the receivership because appellee was a simple creditor only, and it was error to appoint a receiver at the suit of a simple creditor who has lost his lien. This loses sight of the fact that the deed of trust was by its terms a charge or lien on the rents. The decree cancelled the deed of trust only insofar as it affected the property which was the separate property of the wife.

Appellee presents a number of cross-assignments. We overrule the first contention, which is that the husband has authority to extend any indebtedness secured by a mortgage on the wife's separate property, he having control and management of such property.

Also the second, which is that by the terms of the deed of trust it was contemplated that he might exercise the power of extending the note, it being specially stipulated therein that any extension or extensions should not impair or relinquish the lien. The provision which this has reference to reads as follows: "It is agreed and understood that any extension or extensions may be made in the payment of said above described indebtedness or any part thereof or any amount or sums paid out or expended under the provisions hereof, or any part of the security herein described may be released, without in anywise altering or diminishing the force, effect or lien of this instrument in favor of any junior incumbrancer, mortgagee or purchaser, or any other person or persons hereafter acquiring any lien upon, or interest in, or title to said above described property or any part thereof, and any such extension or extensions shall be binding upon all junior incumbrancers, mortgagees, purchasers or any other persons hereafter acquiring any lien upon or interest in, or title to, said above described property or

any part thereof, and this instrument shall continue and remain a prior lien and charge notwithstanding any such extension or extensions, release or releases." We think it is clear that this had in contemplation only subsequent incumbrancers or purchasers, and was intended to cut them off from claiming rights by reason of an extension or release, but was not designed to give the husband the power to extend, and thereby deprive the wife of any right she might have by reason of an extension not participated in by her.

We also overrule the proposition that the insolvency of the husband would effect the rule that a contract of extension of his debt, not participated in by the wife, discharges her property which stands as surety for such debt.

We likewise overrule the proposition that where the new agreement is that the debtor should pay at the end of the period agreed upon for the extension, precisely the same which was due at the time the agreement was entered into, the surety would not be released. This is based upon the fact that the interest on the sum due, at the date of the extension ($5,000) was paid in advance. Whether paid in advance or contracted to be paid in the future, it was a consideration for the contract of extension made by the husband in reference to the debt.

The other cross-assignments we must sustain. The court would not allow defendant to plead or prove that a certain portion of the indebtedness was for money advanced and used to pay taxes on her separate property. It seems to us clear that for such sums her separate property would under our statute be charged primarily, and not as surety, and hence her property would not be discharged from such part of the debt by reason of the extension. For the same reason the property would be liable, and not be affected by the extension, as to that part of the indebtedness which may have represented the original of the successive deeds of trust, the one given February 11, 1893. This deed of trust was for $1,500, interest, etc., and was given on the same property by both husband and wife. It appears that at that time the husband owned an undivided half interest in the property. These conditions existing, he, on June 18, 1894, conveyed same to plaintiff, the deed expressly providing that the conveyance thereof was subject to the said deed of trust. On May 12, 1896, they gave to T. C. Frost & Co. another deed of trust on the property for $500. On December 17, 1897, plaintiff and her husband executed a new deed of trust upon same property securing said three notes and also a new note for $2,000, which deed of trust provided that the two previous mortgages should not be in any wise released or impaired, but should remain in full force and effect, and that this mortgage should be a further and continuous security therefor. The deed of trust in question was executed December 1, 1899, and recited that $4,000 of the amount was for the purpose of taking up and discharging the said four notes mentioned in the deed of trust of December 17, 1897, and that it was intended and specially agreed and understood that as to said $4,000, T. C. Frost shall be subrogated to the liens and all the rights, privileges and benefits existing securing said four notes, and that it was expressly understood and agreed that not only the liens secured by the mortgage of December 17, 1897, but that the liens secured by said other two mort-

gages shall be perpetuated, extended and continued herein, and that said T. C. Frost shall be subrogated to the liens and all 'rights, benefits and privileges inuring or secured under said three deeds of trust.·

The principle invoked by plaintiff can have no application where the debt extended was her own debt, or a debt primarily chargeable to her separate estate. For such debt her estate would not stand in the attitude of a surety. The original debt of $1,500 (two notes of $750 each) was a lien on the property, one-half of which at that time was the wife's separate property and one-half the separate property of the husband. She afterwards, while that debt and lien were in full force, acquired his half, accepting a deed of gift from him which expressly gave her that half subject to the debt. Thus when it came to her hands it was charged with the debt, and that half, as between her and her husband, became liable primarily for the debt. To him, or to that debt, it did not stand as surety. It stood between him and the debt. The lien of that deed of trust was, by the very terms of the succeeding deeds of trust incorporating the very debt, not extinguished, but continued. Under these circumstances we think that an extension that would discharge plaintiff's property which stood merely as surety for the debt extended, would have no such effect as to said half interest in the property on that part of the indebtedness which was carried into the later deeds of trust as embodying the original notes for $1,500.

Article 2970, Sayles' Civil Statutes, provides: "The wife may contract debts for necessaries furnished herself' or children and for all expenses which may have been incurred by the wife for the benefit of her separate property, and for such debts suit may be brought in the manner provided in article 1201." This article relates particularly to simple debts incurred by the wife or by her authority. She may, without reference to her husband, contract for such purposes or authorize her husband or some one else to contract for same, and for such debts she may be sued and the judgment satisfied out of her separate estate. Except as to her homestead, she may, if joined by her husband, mortgage her property for any purpose, even for his personal debts. In this case she executed with her husband the several deeds of trust on the property in question, each for a note signed by him alone. The mortgage placed a lien on the property. Insofar as that note represented his individual or separate indebtedness, her property stood as security. But some of the money contracted for in the transaction was alleged to have been applied to satisfy tax liens on the very property, and for other purposes claimed to be for the benefit of the wife's separate estate. The husband, of course, became liable for all such sums, because he gave his note for all the money, but properly speaking, if applied for the benefit of her estate, such sums were not for himself personally. By giving the lien as security for such note, she herself charged her property with all such sums as were applied for the benefit of her separate estate. Insofar as the debt consisted of such sums, her property was not encumbered merely as surety for the debt of another. Her husband may have contracted for such sums, and had she not given the mortgage in connection with them, she would not have been liable unless it were shown that she had authorized them to be contracted. But here she gave the mortgage charging this property,

with such sums, and the question of this particular property being charged therewith was settled by her own act. The only question is, did the extension operate to exonerate the property from that much of the debt, and we are of opinion that it did not.

Being of the opinion that notwithstanding plaintiff's right to have the deed of trust in question cancelled as to her property insofar as the debt extended by the husband was his debt in the sense that her property was merely surety therefor, we conclude that this would not be the effect of such extension, upon so much of the $5,000 note as represented the indebtedness evidenced by the first deed of trust, and as to any and all sums that were applied for the benefit of her separate estate. Defendant should have been permitted to plead and prove accordingly, and therefore the judgment is reversed and the cause remanded, and this reversal being on cross-assignments, the costs of this appeal are adjudged against appellant.

*Reversed and remanded.*