## W. A. Turner et al. v. National Cotton Oil Company.

### Decided April 2, 1908.

**1.—Foreign Corporation—Permit to do Business—Evidence.**

A foreign corporation must show that it has complied with the law entitling it to do business in Texas in order to maintain suit on a contract made in carrying on such business; and the receipt of the Secretary of State for its license tax is not evidence of such compliance.

**2.—Same—Judgment Cancelling Permit.**

The record of a judgment cancelling the permit of a foreign corporation and enjoining it from doing business in Texas was admissible under the general denial to show its lack of authority to enter into or sue on a contract made after such judgment was rendered.

**3.—Sureties.**

The undertaking of a surety is to be strictly construed, and his liability will not be extended beyond the words of his agreement.

**4.—Same—Bond to Account for Money Advanced.**

Sureties on the bond of a principal to account for moneys advanced to him by his employer in the latter's business are liable only for default with reference to such accounting, and not for his failure to comply with other undertakings in his contract with his employer, such as to care for cotton seed purchased and pay for all loss of weight thereon beyond two percent.

Appeal from the County Court of Harris County. Tried below before Hon. A. E. Ammerman.

*Andrews, Ball & Streetman,* for appellants.—The filing of its articles of incorporation with the Secretary of State of this State is a condition

precedent to the maintenance of suit in any of the courts of this State upon any contract or right of action accruing to a foreign corporation, and, being a condition precedent, must be both alleged and proved, to entitle such corporation to judgment in any such suit. Rev. Stats., arts. 745, 746; Taber v. Interstate B. & L. Assn., 91 Texas, 93.

The franchise tax receipt issued by the Secretary of State to the National Cotton Oil Company was neither sufficient nor any evidence of the fact that such corporation had filed its articles of incorporation with the Secretary of State. Rev. Stats., art. 749; St. Louis Expanded Metal Fireproofing Co. v. Beilharz, 88 S. W., 512; Missouri, K. & T. Ry. Co. v. Thompson, 11 Texas Civ. App.; 658; 9 Ency., Evidence, 706; Cary-Lombard Lumber Company v. Thomas, 22 S. W., 743.

The appellee having alleged itself to be a foreign corporation, doing business in this State under a permit to do so, and having failed to make proof of such allegation, was not entitled to recover. Lea v. Union Cent. Life Ins. Co., 17 Texas Civ. App., 451; Chapman v. Hallwood Cash Register Co., 32 Texas Civ. App., 76.

If there was any presumption from the franchise tax receipt introduced in evidence that the plaintiff had a permit to do business in Texas, such presumption was beyond peradventure overcome by the judgments of the District Court of Travis County, the Court of Civil Appeals and the Supreme Court, offered in evidence by the defendants, revoking and forfeiting the permit issued to plaintiff.

Where the sole condition of a bond sued upon is that the principal therein shall well and truly account for and repay to the obligee such sums of money as the obligee might from time to time advance to the principal, or which the principal might have in his possession belonging to the obligee, the liability of the sureties on such bond can not be extended by implication or intendment to cover an amount alleged to be due from the principal to the obligee, not out of moneys advanced to the principal, or which the principal has in his possession belonging to the obligee, but by the terms of a separate contract between such principal and obligee, such contract not being referred to in the bond, and there being no evidence to show that the sureties on said bond had any notice of said contract. Wood & Lea v. Hollander, 84 Texas, 394; Coe v. Nash,. 91 Texas, 121; Pingrey on Suretyship and Guaranty, secs. 66, 67; Brant on Suretyship and Guaranty, sec. 106; Burlington Ins. Co. v. Johnson, 12 N. E., 205; John Hancock Mut. Life Ins. Co. v. Loewenberg, 23 N. E., 978.

*Baker, Botts, Parker & Garwood,* for appellee.—Even if the franchise tax was inadmissible under the rules of the law, which is not admitted, still it was the right of appellants to waive the question of admissibility, and the instrument having been received in evidence without objection to its admissibility, it was the right and the duty of the jury to consider it as evidence of any fact which it might tend to establish, in precisely the same manner as if it had been legally admissible. 9 Enc. of Evidence, 111, and authorities there cited; 1 Elliott on Evidence, sec. 27; Hunt v. Siemers, 22 Texas Civ. App., 94; Patrick v. Badger, 41 S. W., 538; Stooksbury v. Swan, 85 Texas, 563, 569; Farber v. Railway Co., 139 Mo., 272, 284; Thomas v. Ellis,

25 Ga., 137; Jones v. Railroad Co., 55 Ga., 122; People v. Smith, ·53 Pac., 803.

The law presumes that a public officer in performing the functions of his office, acts rightly and as his duty and the law require. Hence, the issuance of the franchise tax receipt to appellee in this case raises the presumption that appellee had a permit to do business in this State, and the court can not hold, as a matter of law, that the receipt which was admitted without objection is entirely without probative force to establish appellee's right to do business in this State. Rev. Stats., arts. 745, 5243i, 5243j; Acts of the Twenty-fifth Legislature (1897), chap. 120, page 168; 22 Am. & Eng. Enc. of Law (2d ed.), 1207; Howard v. Perry, 7 Texas, 267; Olcott v. Gabert, 86 Texas, 121; Ysleta v. Lowenstein, 25 S. W., 444.

There was no pleading alleging that appellee's permit to do business in this State had been forfeited by judicial proceeding; and all of said judgments and orders antedated the franchise tax receipt which appellee had offered in evidence, and which had been admitted without objection, as proof of its authority to do business in this State. 5 Enc. of Pleading and Practice, 91; Merker v. German, etc., Society, 16 Ind., 181; Stiles v. Laurel Fork Oil Co., 47 W. Va., 838; Rev. Stats., art. 748.

The bond sued on contained a reference to the employment of the appellant Turner by the appellee and was conditioned that appellant Turner should well and truly account for and repay to appellee such sums of money as it should from time to time advance to him. The condition of the bond, therefore, was in effect that Turner should account to appellee according to the terms of his employment for all sums of money which appellee should advance to him. Under the terms of his employment, Turner was obliged to deduct from the sums which he claimed to have paid out in the purchase of cotton seed the value of loss in weight in excess of two percent. In other words, the bond obligated all the appellants to pay to the appellee all of the $8500 advanced by appellee to Turner which he had not accounted for or repaid, according to the terms of his employment. 5 Cyc., 753, 754; Hanks v. Horton, 5 Texas, 103; Richardson v. People, 85 Ill., 495; United States v. Maurice, 26 Fed. Cas., p. 1212, No. 15,747.

LEVY, ASSOCIATE JUSTICE.—By its petition the appellee claimed that it is a corporation organized and existing under the laws of the State of New Jersey, and that it was doing business in the State of Texas under a permit to do so. It was engaged in the purchase of cotton seed in Texas, and had a branch office at Houston, Texas, with J. L. Hudgins as assistant secretary. It employed agents throughout the State to purchase seed for it with funds furnished by it. On August 12, 1904, by a written contract of that date, J. L. Hudgins, acting for the appellee, employed W. A. Turner to purchase cotton seed for the appellee in and around Madisonville, Texas. The substance of the written contract was that W. A. Turner agreed to buy good, sound, merchantable cotton seed for the Oil Company, under instructions from the latter and at such prices only as named from time to time, and to render faithful and efficient services to the best of his ability, and

to keep a correct and true account of all cotton seed so purchased by him and the price paid for same and of all moneys used by him in the purchase and handling of the cotton seed, and to render daily reports of purchases, and price paid, and of expenses incurred in handling the seed. The company agreed to pay Turner $75 per month for his services, and to pay for such cotton seed as might be bought and for the reasonable cost of loading and handling the seed, and for the purpose to furnish the money. In the terms of the contract there is provided that Turner agree to give a bond "for the sum of one thousand dollars for the faithful and satisfactory accounting for all such moneys advanced," and there was this clause: "Fifth. While the party of the first part agrees to pay for the cotton seed purchased, the party of the second part agrees to take proper care of all cotton seed bought, and in the event of the loss in weight between the quantity of cotton seed reported as purchased and the cotton seed shipped and delivered to the said party of the first part exceeding two percent, then the party of the second part agrees to pay for such loss of cotton seed in excess of two percent at the average cost of all cotton seed purchased by him." On October 4, 1904, W. A. Turner as principal, and the others as sureties, executed the following bond:

"State of Texas,⎰
  County of Harris. ⎱
  "Whereas, the National Cotton Oil Company has employed W. A. Turner to purchase cotton seed for it at Madisonville, Texas, and said National Cotton Oil Company, from time to time, advances to said W. A. Turner various sums of money for the purchase of cotton seed:

"Now, therefore, to secure said National Cotton Oil Company in said advances of money by it made, and to be made, to said W. A. Turner, as principal, and J. W. Dean, J. W. Lindley, and R. P. Turner, Joe H. Shannon, as sureties, do acknowledge ourselves bound to pay to said National Cotton Oil Company, in the city of Houston, in the County of Harris, and State of Texas, the sum of one thousand and no/100 dollars, conditioned that the said W. A. Turner shall well and truly account for and repay to said National Cotton Oil Company such sums of money as it may from time to time advance to said W. A. Turner, or which the said W. A. Turner may have in his possession belonging to the said National Cotton Oil Company."

The petition alleged that at the expiration of the contract on January 12, 1905, there was a balance of $475.49 which defendant Turner should have paid to the plaintiff company, and sued for judgment against the principal and his sureties on the bond for the amount. The appellants pleaded a general denial. The case was tried before a jury, and upon the verdict in favor of appellee a judgment was entered. From the judgment appellants appeal to this court.

The first, second and third assignments of error raise in different forms substantially the same question, and are considered in that view. It is complained in these assignments that the court committed error in overruling a motion for new trial and in refusing to give a peremptory instruction to the jury, because there was no evidence in the

case that appellee, a foreign corporation, had filed its articles of incorporation with the Secretary of State as provided by law, or that it had procured a permit to do business in Texas.

During the trial of the cause the appellee introduced in evidence the following:

"No. 450L.        FRANCHISE TAX RECEIPT.        $190.00

"The Secretary of State of the State of Texas hereby acknowledges to have received from National Cotton Oil Co., West New York, N. J., the sum of one hundred and ninety dollars, said sum being the amount of franchise tax due the State of Texas for year ending first day of May, 1905, under the provisions of Section 1, Articles 5243i and 5243j, Chapter 120, Laws Regular Session, 1897.

"In testimony whereof, I hereunto sign my name and have impressed hereon the Seal of State, at Austin, this the 20th day of April, A. D., 1904.

(Seal)    "J. R. Curl, Secretary of State."

There is no other evidence but this receipt in the record having relation to the questions raised. There was no objection raised at the time to the introduction of this receipt.

Appellants contend that this franchise tax receipt issued by the Secretary of State to the National Cotton Oil Company was neither sufficient nor any evidence of the fact that such corporation had filed its articles of incorporation with the Secretary of State, or that it had procured a permit to do business in Texas. To this contention appellee urges that the instrument being received in evidence without objection to its admissibility, it was the right and duty of the jury to consider it as evidence of any fact which it might tend to establish, and that the issuance of the franchise tax receipt by the Secretary of State to appellee in this case, and in evidence without objection as to admissibility, raises the presumption that appellee had a permit to do business in this State.

The appellee was confessedly a foreign corporation, alleged in its petition to be "a corporation organized and existing under the laws of the State of New Jersey." It was further alleged that at the time of the execution of the contract and bond sued upon it "was doing business in Texas, under a permit to do so." It is required by statute that a corporation created under the laws of another State, desiring to transact business in Texas, shall file with the Secretary of State a certified copy of its articles of incorporation; and it is forbidden such corporation to maintain any suit or action in any of the courts of this State on any contract, unless at the time such contract was made the corporation had filed its articles of incorporation in the office of the Secretary of State for the purpose of procuring its permit. Arts. 745, 746, Rev. Stat. Under this law the filing of its articles of incorporation with the Secretary of State is a condition precedent to the maintenance of suit in any of the courts of this State upon any contract or right of action accruing to a foreign corporation doing business within the State; and it being a condition prece-

dent, the fact must be both alleged and proved. Taber v. Interstate Building & Loan Association, 91 Texas, 93. That a permit to do business was granted by the Secretary of State must be affirmatively proved by such corporation. The reason for the rule in this regard is expressed in Cory-Lombard Lumber Co. v. Thomas, 22 S. W., 743, where it was said:

"In order to entitle the complainant to any relief it must show affirmatively that it had complied with the law. Until that is done all its transactions are illegal. The burden of proof being upon it, the court can presume nothing in its favor, and can only hold such of its contracts enforceable as it shows were made after it had complied with the law enabling it to make a valid contract and to transact business."

Art. 749, Rev. Stat., provides that either the original permit or certified copies thereof by the Secretary of State shall be evidence of the compliance on the part of any corporation with the terms of the Act. This is designed to afford an easy method of proving the filing of the articles of incorporation. But neither in this Act nor in the Act providing for payment by foreign corporations authorized to do business in this State, of a franchise tax, is it provided that a franchise tax receipt shall be evidence that a foreign corporation has filed its articles of incorporation with the Secretary of State. In the absence of such provision, we fail to see how the receipt can be held evidence of that fact. A receipt itself is only presumptive evidence of payment. Ency. Evidence, Vol. 9, p. 706. It is not positive evidence of payment. No other presumption can be drawn from a mere receipt than of the facts recited. It is argued by appellants that the presumption that because appellee had paid a franchise tax it had filed its articles of incorporation as required by law, would not have reason to obtain under rules of evidence, any more than would the contention that a tax receipt raises the presumption of title to the land in the party paying the tax. The effect of the franchise tax receipt as evidence is not that the particular fact of appellee's complying with the laws of this State and obtaining a permit to do business is established. But appellee contends that it is entrusted by law to the Secretary of State to issue to a foreign corporation a permit to do business in Texas, and also the collection of taxes from a foreign corporation authorized to do business in this State, and that the law presumes that a public officer in performing the functions of his office acts rightly and as the law requires, hence the issuance of the franchise tax receipt to appellee in this case raises the presumption that appellee had a permit to do business in this State. It is true that when an official act is called in question a presumption will be indulged in favor of its validity. The presumption obtains for the purpose of establishing the validity of the official act, and for the purpose of upholding the official act. In this instance the presumption would be indulged in favor of the validity of the act of the Secretary of State in issuing a franchise tax receipt. But the rule contended for has a limitation, and was never intended to supply proof of independent and material facts. The rule is somewhat more clearly stated by

Mr. Justice Strong in the case of United States v. Ross, 92 U. S., 281-284, 23 L. ed., U. S. Reports, 707-708, as follows:

"The presumption that public officers have done their duty, like the presumption of innocence, is undoubtedly a legal presumption; but it does not supply proof of a substantive fact. Best in his treatise on Evidence, Section 300, says: 'The true principle intended to be asserted by the rule seems to be that there is a general disposition in courts of justice to uphold judicial and other acts rather than to render them inoperative. And with this view, where there is general evidence of facts having been legally and regularly done, to dispense with proof of circumstances, strictly speaking, essential to the validity of those acts, and by which they were probably accompanied in most instances, although in others the assumption may rest on grounds of public policy.' Nowhere is the presumption held to be a substitute for proof of an independent and material fact."

It would be extending the rule beyond its proper limits to hold in this case that a franchise tax receipt is sufficient to affirmatively show that at the time the contract was made appellee had complied with the statute requiring it to file its articles of incorporation with the Secretary of State. The tax is a separate requirement of law. We are of the opinion that the court erred in the matter complained of. In the absence of this affirmative proof appellee was not entitled to recover. Chapman v. Hallwood Cash Register Co., 32 Texas Civ. App., 76.

The fourth and fifth assignments of error are to the same effect and are considered together. The fourth assignment complains of the refusal to admit certain evidence as shown in the following bill of exception:

"Be it remembered that upon the trial of the above entitled and numbered cause, in the County Court of Harris County, Texas, on the 22d day of March, 1907, after the plaintiff had closed its case, and while the defendants were introducing their testimony in support of their defense, the defendants offered in evidence in said cause, for the purpose of showing that the plaintiff had no permit to do business in Texas at the time the contract and bond sued upon were executed: (a) A certified copy of the judgment of the District Court of Travis County, Texas, dated June 2, 1902, in cause No. 18056, entitled the State of Texas v. The National Cotton Oil Company, revoking, forfeiting and cancelling and declaring of no further force, validity, or effect, the permit theretofore granted by the State of Texas to the National Cotton Oil Company, and enjoining said National Cotton Oil Company from transacting any business in the State of Texas, except such as may be and constitute interstate commerce; (b) a certified copy of the judgment of the Court of Civil Appeals of the Third Supreme Judicial District of Texas, dated the 4th day of February, 1903, affirming the judgment of the District Court of Travis County, Texas, in said cause; (c) a certified copy of the order of said Court of Civil Appeals of the Third Supreme Judicial District of Texas, dated March 11, 1903, overruling the motion of said National Cotton Oil Company for a rehearing of said cause; and (d) a certified copy of the judgment of the Supreme Court of the State of Texas, dated April 2, 1903, refusing the application of the said National Cotton

Oil Company for a writ of error to the Court of Civil Appeals in said cause; to which certified copies of said judgments and orders the plaintiff then and there objected, on the ground that the same were immaterial to any issues in this case, which objection was by the court sustained, and the admission in evidence of said certified copies of said judgments and orders was by the court refused, to which refusal of the court to admit said certified copies of said judgments and orders in evidence, the defendants then and there, in open court, excepted, and tender this their bill of exception to said ruling, and pray that the same be approved and signed, and ordered filed as a part of the record of this cause, which is accordingly done."

The judgment of the Supreme Court affirming the judgments of the District Court and the Court of Civil Appeals was dated April 2, 1903, prior to the dates of the contract and bond sued upon. These judgments were objected to upon the ground that they were immaterial to any issue in the case. The general denial of appellants placed the burden upon appellee of affirmatively proving that it had a permit to do business in Texas at the time of the execution of the contract and bond upon which this suit was predicated. The issue, therefore, of a permit *vel non* was raised by the general denial on the part of appellants, and it was competent for appellants to introduce any evidence tending to show that appellee did not have a permit to do business in the State at the date of the execution of the contract sued upon. This evidence would be admissible in rebuttal or denial that appellee had a permit to do business in Texas at the time of the execution of the contract sued upon. The judgments sought to be offered in evidence upon this issue not only revoked and forfeited the permit granted to appellee, but enjoined appellee from further transacting any business in the State other than interstate commerce. To hold that the conclusive effect of such judgments can not be offered in denial of an asserted right to make the contract sued upon, at the time it was made, would be without reason to support it. The judgments as offered were material upon the issue of the appellee's right to do business in the State at the time the contract sued upon was made, and could be offered by the opposite side, for such purpose, under a general denial. We are of the opinion that the court erred.

The complaint of appellants in the sixth assignment of error is to the effect that the court erred in overruling a motion for new trial, because, under the law, the sureties on Turner's bond were not liable for the amount to be recovered because of a loss in weight of seed, their liability being limited by the terms of the bond sued upon to the failure of Turner to account for moneys advanced.

By reference to the contract it is noted that it was executed on August 12, 1904, but the bond was not executed until October 4, following. The bond was executed in pursuance of the fourth clause of the contract, by which appellee agreed to advance W. A. Turner money for the purpose of buying and handling cotton seed, and W. A. Turner agreed to give a bond in the sum of $1,000 "for the faithful and satisfactory accounting for all such moneys advanced." The sole condition of the bond was that the principal, W. A. Turner, should "well and truly account for and repay to said National Cotton Oil

Company such sums of money as it may from time to time advance to said W. A. Turner, or which the said W. A. Turner may have in his possession belonging to said National Cotton Oil Company." The only reference to the contract in the bond is in these words: "Whereas the National Cotton Oil Company has employed W. A. Turner to purchase cotton seed for it at Madisonville." It is not shown that the sureties had any knowledge of the contract.

While the bond sued on in this case is a voluntary bond, the sureties have a right to stand upon the strict terms of their obligations. The condition of the bond relates exclusively to moneys advanced. It does not make allusion to the discharge of the other duties or performance of any other portion of the contract by Turner. In the light of the contract and the bond it is clear that it was the contemplation and intention of the parties to the contract that Turner, the agent and employe of the appellee, should give a bond to secure only the moneys advanced to buy seed, and not for his performance or discharge of any other portion of the bond. The condition in the bond contains the intention. The sureties signed the bond with the condition in precise words, and undertook to guarantee Turner's fidelity as to the moneys advanced, and not to secure his discharge of any other portion of the contract. The undertaking of a surety is to be strictly construed, and his liability will not be extended beyond the precise words of his agreement, either by construction or implication. Brant on Suretyship and Guaranty, secs. 106-107; Burlington Ins. Co. v. Johnson, 12 N. E., 205; John Hancock Life Ins. Co. v. Loewenberg, 23 N. E., 978. We are of the opinion that the sureties are not liable for short weights provided for in the fifth clause of the contract, and can only be held liable according to the precise condition in the bond. The court erred in not granting a new trial. What we have said disposes of the seventh assignment of error.

The eighth assignment is overruled.

For the errors mentioned, the case is ordered reversed and remanded.

*Reversed and remanded.*