## MAIER v. THORMAN et al.   (No. 6602.)

(Court of Civil Appeals of Texas.   San Antonio.   Oct. 19, 1921.)

**I. Mortgages ⬱283(I) — Acceptance of new obligors as principals makes the original obligor a surety.**

Where purchasers bought property subject to a mortgage, their promise to pay a note for which the mortgage was given was a promise to pay the holder and owner of the note, and, on agreement by the owner of the note, made them principal obligors, and the original obligor a surety.

**2. Mortgages ⬱283(3)—Mortgagor is released by extension of time to purchasers.**

Where purchasers of land, mortgaged to secure a note of the original obligor, assumed the note and were accepted as obligors by the owner of the note, the verbal agreement of the owner of the note to extend the time of payment, followed by a written agreement between the owner and the new obligors, extending time of payment and specifying that no parties liable should be released by the extension, but which was without the consent of the original obligor, who had become a surety, released the surety.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by F. J. Maier against H. C. Thorman and others. From a judgment against other defendants, and in favor of defendant Thorman, plaintiff appeals. Affirmed.

Hertzberg, Kercheville & Thomson, of San Antonio, for appellant.

Terrell, Davis, Huff & McMillan, of San Antonio, for appellees.

COBBS, J.   Appellant sued H. C. Thorman, B. D. Gordon and wife, Mattie Gordon, for the sum of $4,000, evidenced by a note and deed of trust to secure the same, dated November 2, 1912, due on 2d day of November, 1917, payable to appellant, bearing 8 per cent. interest per annum, interest payable semiannually. As appellees accept the statement of the case made by appellant, we here copy therefrom:

The note was "secured by a deed of trust on a number of small tracts of land situated in Dimmit county, Tex., in and near the town of Brundage, and that on November 25, 1916, the said property was sold and conveyed by H. C. Thorman to B. D. Gordon and wife, Mattie Gordon, who assumed the payment of said note; that on June 27, 1919, appellant and the said Gordons executed a contract of extension of said note to November 2, 1919, said extension expressly providing 'that it is agreed and understood that the owner and holder of said note, by making and granting said extension, does not in any manner waive, lose, or relinquish any of the liens securing the same, or the personal liability of any person now liable thereon, and all of the provisions and conditions of said note and the deed of trust lien securing the same shall follow this said extension and apply with the same force and effect to said note as extended as applied to the note in its original form, excepting only that the maturity date of said note has been changed and extended as above stated.' Appellant alleged that by reason of the execution of said extension agreement so worded the liability of the appellee, H. C. Thorman, on said note still existed; that said note was declared due on October 24, 1919, by appellant, because of the failure of the appellee to pay taxes on said property, and that all of the defendants were notified of a proposed sale of said property by the trustee to take place on January 6, 1920, but that none of them appeared to bid on said property; that on said date the property was sold by the trustee for $1,500 to the appellant, which bid was credited on the indebtedness. Appellant prayed for judgment against all of said defendants for the amount of her indebtedness as expressed by said note, less the amounts brought by said property under foreclosure."

The defense made by appellee was, substantially, that the property was sold to B. D. Gordon and wife with the knowledge, consent, and approval of appellant, and as a part of the consideration of the sale the Gordons assumed and obligated themselves to pay the note, and thereby became the principal obligors, and appellee became thereby the

surety thereon. Being well advised of all the facts, and having recognized and accepted the Gordons as the principal obligors for a valuable consideration, on or about the 27th day of June, 1919, appellant extended the due date of said note of November 2, 1917, to November 2, 1919, which extension or renewal was made, agreed upon, and entered into without the knowledge or consent of appellee, who did not know and was not advised of the same until on or about the 23d of September, 1919, when appellant advised him that she had declared the note due and payable and the property was advertised for sale, to be made on the first Tuesday in November, 1919, and he further averred that he was not legally bound or further obligated by the terms of the extension, because the agreement was made on or about the 27th of June, 1919, after the maturity of the obligation, without his consent, and that prior thereto had been accepted from the Gordons interest payments due on said note from time to time, and for the further reason that without the knowledge or consent of appellee had previously it had been verbally agreed to extend the time of payment of the said note.

The case was tried without a jury, and judgment was rendered by the court in favor of appellant against the Gordons for the sum of $3,383.60, with 8 per cent. interest from date of judgment. And judgment was rendered in favor of appellee, from which this appeal is prosecuted.

Appellant presents here assignments of error, all to the same practical effect, though in different forms, attacking the judgment of the court in holding appellee was discharged by reason of the extension of said note, contending that the terms of the extension itself continued his liability as surety thereon. The facts are substantially agreed upon and are undisputed. There was no finding of facts or conclusions of law requested, nor any suggestion that the court anywhere erred on a fact finding, challenging only his legal conclusion thereupon. So, at the outset, we will give to the ruling of the court the broadest scope in the conclusion that every question of fact necessary to support his judgment was found by him.

[1] This leads us to conclude from the facts that Mrs. Maier accepted the Gordons, by reason of the assumpsit, as the principal obligors in the note, and appellee thereby became surety; in fact, that is the legal effect of an assumpsit. Where one buys property subject to a mortgage, his promise to pay the note for which the mortgage was given is a promise to pay the holder and owner of the note, and not the maker. Gunst v. Pelham, 74 Tex. 588, 12 S. W. 233. It may not have been the intention of appellant to discharge the appellee, but it is conceded the debt had matured, and when she made the extension it was not made with the knowledge or consent of appellee. The language of the extension is stated in appellant's brief, which we copy:

"The clause in the extension agreement, which is dated June 27, 1919, and upon which the appellant relies, is as follows: It first recites that, whereas, Thorman has sold and conveyed said property to B. D. Gordon and wife, on November 25, 1916, who assumed the note herein described, and who are now the legal owners and holders of said property; and whereas, the said Gordons have requested an extension in the payment of said note to November 2, 1919: 'Now, therefore, I, Mrs. F. G. Maier, a feme sole, * * * do hereby extend the time of payment of said note to November, 1919. It is expressly agreed and understood that the owner and holder of said note, by making and granting this extension, does not in any manner waive, lose, or relinquish any of the liens securing same, nor the personal liability of any person now liable thereon, and all of the provisions and conditions of said note, and the deed of trust lien securing same shall follow this said extension, and apply with the same force and effect to said note as extended as applied to said note in its original form, excepting only that the maturity date of said note has been changed and extended as above set out. [Signed] B. D. Gordon. Mattie Gordon. Mrs. F. J. Maier.' Acknowledged on June 27, 1919."

This instrument shows upon its face that appellee sold the property to the Gordons, "who assumed the note," and that "said Gordons have requested an extension in the payment," but does not "relinquish liens securing the same, nor the personal liability of any person now liable thereon." The language used in the latter part of the extension agreement does not show any intention to release any securities, personal or otherwise; but, could such language have the effect, in the absence of any agreement or knowledge of the original maker, or of a statutory law providing for the continuation of a surety's obligation without his consent, whatever may be the law merchant now in existence in respect thereto, for there was no such law at the date of the extension or renewal?

As against the expression last referred to in the written contract, there was a prior verbal agreement of extension without the reservations. At any rate the proof clearly showed that appellant accepted the Gordons on their assumption as the principal obligors in lieu of appellee, and collected interest from them, and had no dealings thereafter with appellee until the default on the extension, and after the same had been placed in the hands of an attorney for collection and the property advertised to be sold under the terms of the deed of trust. But, more than that, the deed of trust itself provided that no transfer or sale of the land should be made without the consent of the beneficiary. The language is as follows:

"It is furthermore stipulated that in the event the said H. C. Thorman should sell this land, or any portion thereof, that the beneficiary may, at her option, either consent to the assumption of the debt secured hereby, by the purchaser, or may declare this entire debt, hereby secured, as matured."

It is clearly established that appellant accepted the Gordons as the substituted purchasers and thereafter dealt with them as such. Was the first debtor, appellee, discharged as principal when the Gordons were accepted as such in his stead? Under the terms of the deed of trust and language thereof, and by the subsequent transactions, appellee contends he was discharged. Whatever may be the holding in other jurisdictions, and the able and diligent attorneys for appellant have cited authorities to support their contention, holding that a surety is not released on his obligation by having time granted the principal when the agreement is made with the principal obligor, without the knowledge or consent of the surety, that the surety is not to be released, that rule does not apply here.

[2] It is not disputed by either party, and both parties agree, that in the sale of the property by appellee, and the purchase by the Gordons, appellee became the surety. The point at issue is as to the effect the extension of the maturity of the note had upon the surety's obligation, when the transaction extending the maturity was made without the surety's knowledge or consent after its due date. It is held in this state that such a transaction releases the surety. Long v. Patton, 43 Tex. Civ. App. 11, 93 S. W. 519; Benson v. Phipps, 87 Tex. 579, 29 S. W. 1061, 47 Am. St. Rep. 128; Moroney v. Coombes, 88 S. W. 430; De Barrera v. Frost, 39 Tex. Civ. App. 544, 88 S. W. 477; Short v. Shannon, 211 S. W. 463; Red River National Bank v. Bray, 105 Tex. 312, 148 S. W. 291. The extension agreement was not dated, but was acknowledged June 27, 1919, over a year and some months after the maturity of the note. It is undisputed that appellant, without any reservation, in a verbal agreement, agreed that when the note matured she would grant a further extension of two years, which she afterwards confirmed by the written agreement. Mr. Justice Phillips said, in Bank v. Bray (Supreme Court), supra:

"The established rule of law is that if, without the consent of the surety, a binding agreement is made between the creditor and the principal debtor for an extension of the maturity of the debt, the surety is released; and the effect is the same as to property that stands in the relation of a surety, as did the property of Mrs. Bray in this case. The reason of the rule demonstrates its justness as a principle as well as its necessity in the business affairs of the people, for at any time after the maturity of the debt the surety, for his own protection, should possess the right to pay it and proceed against the principal for indemnity,

and such right is impaired if the creditor enter into a valid contract with the principal for an extension of the time of payment. The law, therefore, visits upon the creditor the deserved consequence of his so impairing the right of the surety by releasing the surety from liability."

At the date of the maturity of the note appellee might have been well prepared financially to pay off the note. The land may have been of sufficient value at that time, or the Gordons able to pay in full; but conditions may have so changed within the period of 18 months as to render the land of not sufficient value, or the Gordons unable to respond, or as well, perhaps, for appellee to pay it off, or give the original extension, if necessary. Hence, when the extension was made without the appellee's knowledge or consent, the appellant trusted most, and must suffer the loss of appellee, as further obligated. The undertaking of a surety must be strictly construed. Turner v. Nat. Cotton Oil Co., 50 Tex. Civ. App. 468, 109 S. W. 1112. Whatever the rule contended for by appellant, as stated above, we believe our courts have spoken clearly on the subject. It was held in Robson v. Brown, 57 S. W. 686:

"But that agreement was between Barnhill and Brown, the owner of the note and the payor, and, if it extended the time of payment of the note without the consent of the surety, he would be released, notwithstanding the clause that he was not to be released. The parties to the agreement could not bind him; he not being a party thereto. The parties to the agreement could bind themselves, but they could not bind strangers to it. They could not make a contract for the surety; he not assenting, and not being a party to the agreement. The clause as to nonwaiver of suretyship did not affect him. They might make a binding agreement to extend the time of payment of the note, but they could not therein bind the surety not to claim his release."

It was held in Templeman v. Texas Brewing Co., 35 S. W. 935:

"The idea of the parties may have been that they could do this without releasing the sureties, and such may have been the positive agreement; yet, if the real transaction, as the evidence shows it to have been, was such as in law to discharge the sureties, the parties could not by agreement alter its legal effect, without the consent of the sureties."

The last case above cited was from this court, opinion by Mr. Justice Neill.

The rule of strict construction as applied to contracts of suretyship also means that the obligation of the surety shall not be extended by implication or presumption. It must be construed in the light of the intent of the parties, and resort may be had to the purposes of the parties in the making of the contract, because the law holds that time of payment of obligations must not be extended without the consent of those not primarily

liable. If the law was otherwise, the principal might keep the surety liable, and forever prevent his enforcing payment against the principal obligor, or using the statute of limitations as a 'defense. Of course such a clause, as written by appellant, which sought to impose on the assumed note an obligation not agreed to by appellee, if it had been in the original contract, the extension might be made; but it could not be made, not being provided in the original obligation, after the maturity of the note, without the knowledge and consent of the maker. Such seems to be the holding of the Commission of Appeals, approved by the Supreme Court, in State Nat. Bank of Ft. Worth v. Vickery (Com. App.) 206 S. W. 846.

The evidence shows, except the interest payment due in 1917, the Gordons paid each subsequent semiannual interest payment until the note was declared due, without giving appellee any notice that the note was extended or that Gordon was thereafter keeping the interest paid; that at the time Gordon paid the interest due November 2, 1917, it was understood the time of payment would be extended to the Gordons to June 27, 1919. The consideration was accepted by and paid to appellant, for which the Gordons received the benefit.

We can see no useful purpose now in discussing the new negotiable instrument statute. It was passed long after this transaction. Nor is there anything in the contention of appellant that the statute of frauds applies in this case. Besides, there was no question raised below by any pleading, contention, or any error properly assigned thereon. It will be seen, from what we have said in our opinion, the effect of the extension of the maturing of the note after it became due and payable without the knowledge or consent of appellee operated as his discharge therefrom.

The assignments not presenting any material errors in the judgment of the court, it is affirmed.