## GILMORE et al. v. O'NEIL et al.

(Court of Civil Appeals of Texas. San Antonio. June 21, 1911. On Motions for Rehearing, Oct. 4, 1911.)

1. LIMITATION OF ACTIONS (§ 39*)—ACTIONS NOT PROVIDED FOR—REFORMATION OF INSTRUMENTS.

A suit to correct or reform a deed is not an action to recover real estate, though the relief, when granted, may serve as the foundation for its recovery, and must therefore be brought within four years under Sayles' Ann. Civ. St. 1897, art. 3358, providing that every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 190–211; Dec. Dig. § 39.*]

2. ADVERSE POSSESSION (§ 71*)—COLOR OF TITLE—DEED—SUFFICIENCY.

Where a deed, executed more than four years prior to the commencement of a suit in trespass to try title, did not by any construction of its description cover the land in controversy, and no suit had ever been instituted to reform the deed, and nothing had been done by the grantors to prevent or excuse the bringing of such suit, the deed was unavailable as a defense.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 415–429; Dec. Dig. § 71.*]

3. FRAUDS, STATUTE OF (§ 129*)—ORAL SALE OF LAND—POSSESSION AND IMPROVEMENTS.

The owners of certain oil land executed a deed which, by mistake of the description, excluded one-third of an acre intended to be conveyed. After the death of one of them, the grantee sunk an oil well on the excluded land, which exhausted the oil. Held, that a transfer of the omitted land could not be established on the theory of an oral sale, since, after the death of one of the grantors, title by oral sale could not be perfected by erecting improvements, and, the well having exhausted, the oil was no longer an improvement.

[Ed. Note.—For other cases, see Frauds, Statute of, Dec. Dig. § 129.*]

4. MINES AND MINERALS (§ 73*)—OIL LEASE—CONSTRUCTION.

An oil lease described the premises as 30 acres of land, being the unsold portion of the J. 50-acre tract. It provided that should the lessees become interested in any adjoining land, and drill a well or wells within 250 feet of the 30 acres leased, they would drill a well on the leased land adjacent to the wells drilled on the adjoining land, etc. Held, that the lease only covered a single tract of 30 acres, and did not include a strip of adjoining land erroneously excluded from a prior conveyance to others.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 73.*]

5. EVIDENCE (§ 461*)—WRITTEN INSTRUMENT—AMBIGUITY.

Where a lease of oil land contained an ambiguity as to whether it was limited to a single 30-acre tract, or included any and all unsold portions of a 50-acre tract, parol evidence of the intention of the parties was admissible to explain the ambiguity.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2129–2133; Dec. Dig. § 461.*]

6. IMPROVEMENTS (§ 4*)—COMPENSATION—OIL LAND.

Where defendant, at the time he sunk an oil well on certain land in controversy, in good faith believed he had title thereto, and by the expenditure of $11,000 produced oil of the value of $29,563.85 before his right to the land was determined against him, he was entitled to reimbursement for the amount expended in improvements out of the proceeds of the oil.

[Ed. Note.—For other cases, see Improvements, Cent. Dig. §§ 4–26; Dec. Dig. § 4.*]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by G. E. Gilmore and others against John O'Neil and others. From a judgment in favor of defendant O'Neil for the land in controversy and for the proceeds of certain

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

oil in the hands of a bailee, plaintiffs appeal. Reversed and remanded.

John Charles Harris, Harris & Harris, and S. H. Brashear, for appellants. Lane, Wolters & Storey and Wm. A. Vinson, for appellees.

JAMES, C. J. The action was instituted by G. E. Gilmore, W. H. Nicholson, D. R. Beatty, and J. R. Cheek against John O'Neil in trespass to try title for a tract of 66 feet by 208 feet (about one-third of an acre upon which an oil well was procured by O'Neil), a part of what was known as the "James Jones 50-acre tract in Harris county," originally owned by James Jones, the common source of title; it having been community property of himself and wife, Lucy. There were interventions, one by the Guffey Petroleum Company and the other by heirs of James Jones. The controversy involved the title to a strip of land and to certain oil produced from it, the proceeds of which oil is held by the Texas Company, a party defendant, as stakeholder for the litigants herein. Upon findings on special issues by the jury, the court gave judgment in favor of O'Neil for the land and for $29,563.85, the proceeds of the oil in the hands of the Texas Company. James Jones and wife on September 28, 1903, executed to Nancy Duey a deed describing the land conveyed as 1.35 acres out of the southeast corner of the 50-acre tract. On August 1, 1908, Nancy Duey conveyed an undivided half interest to her son-in-law, John S. Kuhn, describing the tract in the same manner, and on same date she gave Kuhn a power of attorney to grant, sell, convey, or lease her half interest, and Kuhn on same day executed a lease of same by the same description to James Donahue, and on same day Donahue assigned the lease to O'Neil. O'Neil some time in August proceeded to drill the well at the point upon the strip in question, as shown on the plat attached hereto, and on September 17, 1908, he purchased and took deed from Mrs. Duey and Kuhn, describing the land as 1⅔ acres of land out of the James Jones tract by field notes, constituting a tract in the southeast corner. O'Neil did not in terms ask for a reformation of the deed correcting said mistake and make himself a plaintiff in a cross-action for that purpose, but pleaded the facts evidently upon the theory that same gave him an equitable title to the one-third in controversy, which he could plead as a defense in this suit to recover the land from him. To this matter the plaintiffs and the interveners representing the heirs of Jones pleaded the statute of limitations of four years, claiming that, as more than four years had elapsed since the deed was made, the right to reform it was barred. The case is briefed extensively and mainly upon this question. There were no allegations as to when the mistake in the deed was discovered, and, in the absence thereof, it must for all purposes be assumed that the right of action to correct the deed accrued at the time it was made.

[1] The statute invoked is article 3358, Sayles' Ann. Civ. St., which reads: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring same shall have accrued, and not afterward." We are of opinion that a suit to correct or reform an instrument, though such instrument concern title to real estate, comes within the above article. It is not an action for the recovery of real estate, though the relief when granted in such proceeding may serve as the foundation for its recovery. It is a proceeding which may be had separately from an action to recover real estate, or in connection with such an action, but the latter is allowed as the result of the former. Railway v. Titterington, 84 Tex. 225, 19 S. W. 472, 31 Am. St. Rep. 39; McCampbell v. Durst, 15 Tex. Civ. App. 535, 40 S. W. 315.

[2] The deed did not by any construction of its terms confer title legal or equitable to the land in question. The facts pleaded by O'Neil did not of themselves, nor in connection with the deed, constitute a title to said tract. Until a court of equity had acted upon the pleading and facts, and granted a correction of the instrument to make it read as was intended by the parties, he had no title by virtue of it that he could use as a defense. It appears to be admitted that he could not as plaintiff sustain such a suit after four years had run against it. It seems to us that he could not do so as a defendant in an action brought against him to recover the land, if he set up the matter by a cross-action, because in so doing he would assume the attitude of a plaintiff. And, if these views are correct, we do not see how he could be in any better position by simply setting up the matter as a defense, relying upon it as an equitable title, when it constituted no title at all.

There was no possession taken by Mrs. Duey for more than four years after the deed was executed of any of the land, nor by any one until O'Neil did so in August, 1908. Nothing was done by Jones or his wife and heirs during that time which operated to prevent or excuse the bringing of a suit to correct the deed. All that appeared in this regard were his or their acts recognizing the fact that this 1½-acre tract in the form shown on the annexed plat was the property of Mrs. Duey. This was not enough to prevent the running of the statute as was explained in the opinion in Mathews v. Benevides. 18 Tex. Civ. App. 475, 45 S. W. 31. Previous to the enactment of said article, our courts applied in lieu of limitations the doctrine of stale demands to equitable actions, and were more liberal in excusing de-

lays in bringing such suits than we conceive is permissible now that the subject is regulated by statute. The statute cannot be ignored. It prescribes the time after which such actions accrue during which the proceeding must be brought, and the only exceptions to its operation are those common to other statutes of limitations. Fraudulent conduct or conduct amounting to fraud, or the like, would excuse, but the circumstances here present no such case.

[3] In the original opinion we took the view that the transaction between Mrs. Duey and Jones and wife amounted to an oral sale of the one-third of an acre omitted from the deed, but we now conclude that this view was erroneous for several reasons: (1) Because after the death of Jones, which occurred in 1907, a title by oral sale could not be perfected by erecting improvements on the land. Ryan v. Wilson, 56 Tex. 36. (2) Because the undisputed testimony is that the oil well sunk on the one-third of an acre had exhausted the oil, and therefore it was not in any sense an improvement of the land. The result of the above conclusions is that O'Neil was without title to the one-third of an acre in question, and has no claim to the oil or the proceeds thereof by reason of the transaction of sale by Jones and wife to Mrs. Duey. It appears that on May 6, 1908, after the death of Jones, a renewal lease was executed by Mrs. Jones and most of the heirs of Jones to D. R. Beatty and J. R. Cheek, whereby was granted to Beatty and Cheek all the oil and gas which might be obtained from "thirty acres of land out of the John B. Jones one third of a league in Harris County, Texas, same being the unsold portion of the James Jones fifty acre tract." The lease contains stipulations usual in such leases. It is under this lease that plaintiffs claim to be entitled to the oil produced by O'Neil from the one-third of an acre in question, which they claim as being an unsold part of the 50-acre tract. They claim that their lease was in force and effect when the oil in question was produced. The jury found that the one-third of an acre was not intended to be included in the lease to Cheek and Beatty. Questions are raised as to the admissibility of certain testimony introduced on this issue upon the ground that the lease was unambiguous as to the land leased.

[4] The lease described as the leased premises: "Thirty acres of land * * * same being the unsold portion of the James Jones fifty acre tract." Further on it states: "It is also stipulated and agreed that should the parties of the second part become interested in any land adjoining the thirty acres herein leased and drill a well or wells within 250 feet of the thirty acres herein leased, etc., * * * then and in that event the parties of the second part bind themselves * * * to drill a well on that portion of the tract herein leased adjacent to said well or wells drilled on adjacent land, etc. * * * It is intended hereby to convey to the parties of the second part the right of ingress or egress to said premises for the purpose of prospecting and developing the same as an oil field, together with the right to erect all such derricks, buildings, machinery, etc., as may be necessary, save and except about two acres of land now occupied by Mrs. L. A. Jones, on which her residence now stands, it being understood that the parties of the second part shall not drill within 200 feet of said residence unless she removes from the place."

It seems to us that this description has evident reference to a single tract of 30 acres. In the first place, the lease says the unsold portion of the 50-acre tract, not the unsold portions. In the next place, provision is made with reference to wells sunk on land adjoining the 30 acres herein leased, and providing, in that event, that the lessees should drill wells on that portion of the tract herein leased adjacent to said wells. If, therefore, the evidence showed a single tract of that quantity of land unsold at the time, it should be taken as the subject-matter of the lease. Reference to the annexed plat will show that that portion of the 50-acre tract west of the west line of the tract sold in 1905 to the National Oil & Development Company and unsold at the time consisted of about 30 acres.

The whole tract was 50 acres. There had been sold off to Barrett three acres. That sold off to the National Oil & Development Company was 15 acres. That marked Dunnam was about half an acre. Deducting, also, the tract of Mrs. Duey as 1⅔ acres, we have the quantity of unsold land in the tract of about 30 acres in a single body west of the west line of the said 15-acre tract. This was undisputed testimony. We annex to this opinion a sketch showing the situation of the different parts of the 50 acres. The one-third of an acre tract in question was detached and remote from the tract of 30 acres. The lease discloses upon its face that the parties were dealing with a single tract of 30 acres as the unsold part of the 50-acre tract. This being so, and there being a tract of that quantity in a body unsold at the time, and the only part of the 50 acres, which met such description, there was in our opinion no ambiguity in the lease as to the subject-matter thereof being said 30-acre tract. We are of opinion, therefore, that the finding of the jury that the parties to the lease intended and understood the subject-matter of the lease to be that part of the 50 acres lying west of the 15-acre tract theretofore sold to the National Oil & Development Company was the only finding admissible consistent with the terms of the deed.

[5] However, if the above view is not correct, the lease upon its face raised a question as to whether or not it applied to said single tract of 30 acres, or to any and all unsold portions of the 50-acre tract. This would present an ambiguity, making it proper to resort to parol testimony to show the intention of the parties. The court properly allowed such testimony, and the finding of the jury on the issue was conclusive of the question. Davis v. George (Sup.) 134 S. W. 326, and cases cited. The result of this view is that plaintiffs are without any claim to the oil or the proceeds thereof.

With reference to the claim of the intervener, the Guffey Petroleum Company, the evidence shows that it is the assignee of the said 15 acres deeded by Jones and wife to the National Oil & Development Company in 1905. This deed describes the 15 acres by field notes as follows: "Beginning at the S. E. corner of C. E. Barrett's three-acre tract on the east line of our fifty-acre tract, 208 feet from its northeast corner; thence south 598.5 feet to the northeast corner of Mrs. Duey's one and two thirds acre tract; thence west 347 feet along Mrs. Duey's north line to her northwest corner; thence south 208.7 feet to her southwest corner on the south line of our fifty acre tract; thence west along the south line of our fifty acre tract 504 feet for corner, thence north 1006 feet to a point on the north line of our fifty acre tract for corner; thence east 225 feet to the northwest corner of Barrett's three acre tract; thence south along Barrett's west line to Barrett's southwest corner, thence east along Barrett's south line 626 feet to the place of beginning." These field notes, according to the undisputed testimony, do not include the one-third of an acre in question. Hence said intervener has no claim to the oil or the proceeds thereof. The above conclusions amount to this: That neither plaintiffs nor intervener, the Guffey Petroleum Company, have any title or claim to the one-third acre tract nor to the oil extracted therefrom; and the right to said land and oil is in the widow and heirs of Jones, or their assignees.

[6] One of the findings of the jury is that O'Neil believed at the time he began operations to sink a well upon the disputed strip of land that he had a good and perfect title thereto, and that he acquired title thereto from Nancy Duey and J. S. Kuhn by virtue of their deed and from the leasehold which had been assigned to him, in good faith believing he owned the land, took possession thereof, began operations thereon, built his derrick and sunk the well, and produced the oil therefrom. This finding entitled O'Neil to the expense of the production, which the jury found to be $11,000. The result of these findings is that, although O'Neil is not entitled to the proceeds of the oil, he is nevertheless entitled to be reimbursed from the proceeds of the oil in the hands of the Texas Company to the extent of said expense, and this court so adjudged. The right to the land and to the remainder of the fund appertains to those who show themselves entitled under Jones and wife, as their heirs or assignees, to the subject-matter, for the ascertainment of which the cause will be remanded to the district court.

The judgment of this court will be that O'Neil is entitled to recover said expense of $11,000; that plaintiffs take nothing by their suit; that the intervener, the Guffey Petroleum Company, take nothing by its intervention, and that as to all other parties hereto the judgment be reversed and the cause remanded. The original opinion is withdrawn, and this one substituted therefor. The motions for rehearing, having been granted, are disposed of by this opinion.

### On Motions for Rehearing.

With regard to the questions whether or not the statute of limitations of four years has application to the reformation asked for of the deed in question, and whether or not said statute ran against the claim of Mrs. Duey of the right to have the deed reformed from and after the date of the deed, we think the cases of Rowe. v. Horton, 65 Tex. 89, Ransome v. Bearden, 50 Tex. 119, and Mounger v. Daugherty, 138 S. W. 1071, decide the question against her and her grantee. The circumstances shown by the testimony in this record develop nothing else than inexcusable neglect to discover the mistake in the deed.

All the motions for rehearing are overruled.