SILVERMAN et al. v. PONCE. (No. 7227.)*

(Court of Civil Appeals of Texas. San Antonio. Nov. 19, 1924. Rehearing Denied Jan. 14, 1925.)

1. Deeds ⊜➞207, 208(1)—Circumstantial evidence to prove deed must be cogent and convincing.

Execution and delivery of a deed may be proved by circumstantial evidence, but only where the circumstances are so convincing and cogent as to produce actual conviction.

2. Deeds ⊜➞207—Circumstantial evidence of execution should be carefully weighed.

Circumstantial evidence to establish the execution of a deed ought to be carefully weighed.

On Motion for Rehearing.

3. Deeds ⊜➞207—Evidence held insufficient to show conveyance from decedent to agent.

Evidence held insufficient to show deed from decedent to agent.

⊜➞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 11, 1925.

268 S.W.—32

Appeal from District Court, Jim Wells County; Hood Boone, Judge.

Trespass to try title by Dilla Cohn Silverman and others against Oscar F. Ponce. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

L. Broeter, of Alice, and J. C. Scott, of Corpus Christi, for appellants.

R. R. Mullen and Perkins & Floyd, all of Alice, and Boone & Savage, of Corpus Christi, for appellee.

FLY, C. J. This is an action of trespass to try title to two tracts of land, one containing 320 acres, known as lot 13, and the other 327.5 acres of land, known as lot 22, out of a tract known as the Adams-Staples farm lots in Jim Wells county, instituted by Dilla Cohn Silverman, joined by her husband, Abe Silverman, and Archie Cohn and Louis Frank, the last two being executors of the last will of Philip Cohn, deceased, against appellee, Oscar F. Ponce. The cause was submitted to a jury on special issues, only the first being answered, and upon that answer judgment was rendered in favor of appellee for the land.

Dilla Cohn Silverman was the wife of Phillip Cohn, deceased, and after his death she married Abe Silverman, who joined her in this suit. Appellee claims title to the land through a warranty deed from P. J. Harmon who was impleaded by appellee, and he sought to show that the land had been conveyed to him by Philip Cohn through a deed which had never been recorded, was not produced, but was claimed to have been lost. The jury found that P. Cohn had executed and delivered to P. J. Harmon a deed to the lands in controversy, and the only material issue on this appeal is as to whether there was sufficient evidence bearing on the subject to uphold and sustain the verdict of the jury. If that deed was not executed the title to the land is undoubtedly in the estate of P. Cohn, deceased, and appellants should have recovered it from appellee. The solution of the whole matter of this appeal must be found in the facts shown upon the trial, and, while the brief of appellants covers over 100 pages of printed matter, and that of appellee over 100 pages, the facts have not been culled from over 400 pages of the statement of facts and marshaled and arranged as they should have been to give proper assistance to this court in arriving at a correct conclusion. We have been driven to the unnecessarily voluminous and tedious statement of facts to verify and elucidate propositions of the parties.

Philip Cohn died on May 7, 1912, in Chicago, leaving a will in which he appointed his widow, Dilla Cohn Silverman and Archie Cohn and Louis Frank executors of his estate. About 6 years after his death his widow married Abe Silverman. Mrs. Silverman has paid the taxes due on the land in controversy since his death. S. Gugenheim, H. Cohn, and Clark Pease sold a large tract of land lying in Nueces county, known as the "Adams-Staples farm lots," on January 1, 1910, to P. Cohn. The land was subdivided into farm lots, and Harmon was constituted agent to sell the same by virtue of a contract between P. Cohn and Harmon and Duncan. On June 18, 1910, Harmon, in his own name, and not as agent, sold to appellee the lands in controversy together with a third tract. The deed was recorded on July 25, 1910. No deed from P. Cohn was produced and the evidence fails to show that P. Cohn ever executed a deed conveying the land to Harmon or any one else. It is the claim of appellee that it was shown by the circumstances that a deed was executed by Cohn to Harmon, but the facts and circumstances fail to satisfy us that a deed was ever executed and we are of opinion that there was no evidence before the jury of sufficient cogency to establish the execution and delivery of a deed. Louis Frank, who was associated with Cohn in business and very intimate with him, swore that Cohn did not execute a deed to Harmon for lots 13 and 22. The evidence showed that Harmon was always behind on payments on land sold by him as agent. P. Cohn lived and died in a distant state.

[1, 2] The execution and delivery of a deed may be proved by circumstantial evidence, but the circumstances must be of such a convincing and cogent nature as to produce actual conviction. Bounds v. Little, 75 Tex. 316, 12 S. W. 1109; Walker v. Caradine, 78 Tex. 489, 15 S. W. 31. The deed in question, from Cohn to Harmon, had no sanctity, or presumption of execution, given it by lapse of time, but it comes as a deed executed a few years since and never mentioned until P. Cohn's lips were closed in death. Great caution should be exercised in weighing evidence of the execution of a deed of which there is nothing but circumstance upon which to depend. Proof of deeds under such circumstances offers too rich a field for fraud and deception.

The judgment will be reversed and the cause remanded.

### On Motion for Rehearing.

[3] On June 18, 1910, P. J. Harmon conveyed to Oscar F. Ponce, for a recited consideration of $29,100, of which $15,500 was in cash and the balance in three promissory notes, 727.5 acres of land in three tracts, the third tract of 80 acres being described as a part of what is known as the "Magnolia Fig & Orange Colony." A vendor's lien was retained in the deed on the land to secure the deferred payments. There is no mention in the deed of any conveyance to Harmon from P. Cohn or any one else. Harmon claimed

to have received a deed from Cohn to the land, but no such deed was on record nor produced by Harmon. He seeks to account for the absence of the deed by a claim that it had been lost or misplaced. Cohn is dead and the existence of the deed to the 727 acres of land from Cohn to Harmon rests alone upon the testimony of Harmon. The letter written by him to Cohn on December 28, 1910, does not ask for a deed to him, but the plain inference from the terms of the letter is that the deed was to be executed to a "party from Wichita who was down here some time back." No reason can be assigned for having a deed made to Harmon and then executed by him to Ponce. He is the only witness that testified to having seen a deed made to him by Philip Cohn, and he, although he had written about certain considerations, did not know what consideration was recited in the deed. At the time that Harmon swore the land was conveyed to him by Cohn he was behind in payments on notes collected by him. Harmon claimed to have received the deed to him in January, 1911, the date of the letter containing it being January 2, 1911. The deed to Ponce was dated June 18, 1910, more than 6 months before Harmon had any deed to it, and it was placed on file for record on July 25, 1910, and it was on record months before the supposed deed from Cohn to Harmon was executed. Ponce was an associate with Harmon in selling Cohn's land. He did not live in Wichita when the deed was made to him by Harmon and was not living there when Harmon wrote the letter to Cohn in December, 1910. It was a case of an agent selling to his partner in the business agency. Ponce did not know who owned the land when he bought it. Ponce did not record his deed from Harmon, but the latter recorded it. Ponce did not pay any taxes on the land, and never did go into actual possession of the land. Harmon was in possession of it. Ponce did not get any abstract of title to the land, and Harmon did not tell him he owned the land, and never told Ponce that he had a deed from Cohn. There is testimony tending to show that a man named Lauhmiller, of Wichita, had bought land from Harmon and may have been the man from Wichita referred to in Harmon's letter to Cohn. Ponce seems to have known almost nothing about the tract of land which Harmon sold him without having a deed himself, and who remained in possession after the sale, just as he had before. Philip Cohn died in May, 1912, without any knowledge of the sale made by Harmon to Ponce, so far as shown by any witness except Harmon, who seems to be the real party to the suit and not qualified to testify as to his transactions with Cohn within the spirit of the law, if not within the letter.

Louis Frank was a brother-in-law and partner of Philip Cohn and had been very intimate with him for 10 years prior to his death. Frank swore positively that Cohn did not execute a deed to the land in controversy to Harmon. Cohn always acted in regard to matters of importance through Frank. Ponce knew nothing of the existence of the deed, Harmon alone swearing to its existence and loss. Whether the deed was ever acknowledged is not shown, and the efforts put forth to discover it were not adequate to show diligence. The evidence is not sufficient to show the execution of a deed by P. Cohn to the 727 acres.

The motion is overruled.