### JONES–O'NEAL FURNITURE CO. v. JONES et ux. (No. 1148.) *

(Court of Civil Appeals of Texas. Beaumont. Feb. 6, 1925. Rehearing Denied Feb. 18, 1925.)

1. Witnesses ☞318—Admitting evidence of good reputation of unimpeached witness held erroneous.

Where testimony of plaintiff and others was that her ailments resulted from injury caused by defendant, whereas testimony for latter was that ailments existed prior thereto, admission of evidence of plaintiff's good reputation for truth and veracity, where no attempt had been made to impeach her *held* erroneous.

2. Witnesses ☞410—Admission of good reputation evidence not warranted by mere contradiction between witnesses.

Mere contradiction in testimony of witnesses or parties to cause, however sharp, will not authorize introduction of evidence of good reputation of witnesses for truth and veracity.

**3. Appeal and error ⬅➡1050(1)—Admitting evidence of good reputation of unimpeached witness prejudicial error.**

Testimony of plaintiff and others being in sharp conflict with testimony for defendant on issue of whether plaintiff's ailments were result of injury caused by defendant, admission of evidence of plaintiff's good reputation for truth and veracity, which had not been attacked, *held* prejudicial error.

Appeal from District Court, Jefferson County; J. M. Combs, Special Judge.

Action by K. Jones and wife against the Jones-O'Neal Furniture Company. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Jno. M. Conley and P. D. Renfro, both of Beaumont, for appellant.

Howth, Adams, O'Fiel & Hart, of Beaumont, for appellees.

HIGHTOWER, C. J.   The appellees, K. Jones and his wife, Mrs. Jessie Jones, filed this suit in one of the district courts of Jefferson county against the appellants, Jones-O'Neal Furniture Company, seeking to recover damages alleged to have been sustained in consequence of personal injuries alleged to have been inflicted upon Mrs. Jones through the negligence of appellants, their agents, and servants.

A brief statement of the cause of action as alleged in appellees' petition will suffice for the purposes of our disposition of this appeal. They alleged, in substance, that the appellants were partners engaged in the furniture business in the city of Beaumont, and that on or about the 26th of October, 1922, Mrs. Jones, with a view to purchasing a rug and other articles of merchandise, entered the furniture store of appellants, and that while she was there and in the act of examining one of appellants' rugs, which was on the floor, and while in a stooping posture, another rug fell from a rack, upon which a number of rugs were stacked or had been placed, and struck her a severe blow on the back, and that this resulted in serious and permanent injury to Mrs. Jones. The resulting injuries were alleged to be to her spine and neck, causing great physical pain and mental anguish to Mrs. Jones, and greatly weakening her and causing her to become greatly nervous, and that the blow on her back had also resulted in the displacement of one of her female organs, which had caused her great pain and suffering, and would continue to cause her such pain and suffering in the future, and would necessitate a costly operation in an attempt to restore the organ, if it could be done, etc.   It was further alleged that, prior to the claimed injury in question, Mrs. Jones was a healthy woman, did all of her housework, and never,

prior to that time, suffered any pain in her back or neck or head, and that none of the ailments of which she now complains existed prior to the claimed injury.   The prayer was for judgment in favor of Mrs. Jones for actual damages in the sum of $10,000, and for judgment in favor of Mr. Jones for lost time and for lost services of his wife, and expenditures for medicine in treating her, in the sum of $5,000.

The appellants answered by general denial, and a plea of contributory negligence on the part of Mrs. Jones, unnecessary to further detail here.

The case was tried with a jury and submitted upon special issues, and upon verdict as returned judgment was rendered and entered in favor of Mrs. Jones for $1,000 actual damages, and from that judgment this appeal has been prosecuted.

A number of assignments of error were made by appellants, but in their brief counsel have brought forward for our consideration only one of these assignments upon which they rely for reversal of the judgment.

Mrs. Jones and her husband were both witnesses upon the trial, and, after Mrs. Jones had testified to the manner in which the claimed injury was received by her, she then went on to detail the extent of the injuries, and her testimony in that connection was, in substance, as follows:

She testified that before the claimed injury she was a well and healthy woman, that she had never had any trouble with her back or spine, and had never had any serious pains in her neck or back part of her head, and that her female organs were all intact, and there had been no suffering in that connection. ' She then testified further that since the claimed injury she had been almost a constant sufferer from severe pains in the small of her back and spine, at times almost unbearable, and also that she was now subject to frequent severe pains in her neck and back of her head, and also that shortly after the claimed injury, it was discovered, upon examination by physicians, that one of her female organs had been displaced, and that, as a result of all these injuries, she had become very nervous and greatly reduced in strength, and was no longer able to perform her household duties as she had theretofore.

Mr. Jones, the husband, testified substantially that prior to the claimed injury Mrs. Jones was a vigorous and healthy woman, had not suffered from pains in her back or spine, and had never complained of pains in her neck and back of her head, and that she was able to do and did do her own housework, but that since the claimed injury his wife had suffered severely with pains in her back and spine and in the back of her neck and back of her head, and that it had been ascertained that one of her female organs

had become displaced, all causing her to become very nervous and weak.

After this testimony had been introduced by the plaintiffs, the defendants called as a witness in their behalf Mrs. J. C. Myers, and this witness testified in substance that for several years next preceding the claimed injury Mrs. Jones was a periodic sufferer from pains in her back and back of her neck and back of her head, and that at times these pains were very excruciating; that such attacks would sometimes last for several hours, and that the effect of such attacks would be apparent on Mrs. Jones for a week or 10 days thereafter. She further testified that she had on many occasions administered to Mrs. Jones while suffering from these attacks by applying hot poultices, etc., in the region of her pains, and that these occasions, prior to the injury, were so numerous that witness would not undertake to say how often such attacks had occurred.

Defendants also introduced Mrs. Ruby Gammage, whose testimony was substantially the same as that of Mrs. Myers in detailing the condition and health of Mrs. Jones prior to the claimed injury.

Appellants also introduced Mrs. Effie Childs, and, while she had not known Mrs. Jones as long as had Mrs. Myers and Mrs. Gammage, yet she testified that she had been to Mrs. Jones' house on a number of occasions prior to the claimed injury and found Mrs. Jones in bed suffering intense pain in the lower part of her back and in the back of her neck and back of her head.

Appellants also introduced Dr. Davis, an osteopath, and this witness testified in substance that, several years prior to the claimed injury of Mrs. Jones, he had treated her for nervous troubles, but did not remember and could not state in detail the specific troubles or ailments that at that time affected Mrs. Jones.

Appellants then introduced as a witness Dr. Tatum, who, not a great while after the claimed injury to Mrs. Jones, had been called by her for treatment, and this witness testified in substance that he discovered, on examination of Mrs. Jones, that there was a displacement of one of her female organs, but that in his opinion this was not the result of the injuries which Mrs. Jones claimed she received in appellants' store, giving his reasons for such opinion.

There was further testimony by other witnesses for both sides, bearing more or less upon the nature of Mrs. Jones' injuries and extent thereof, but the details of this are immaterial here.

[1] After the witnesses Mrs. Myers, Mrs. Gammage, Mrs. Childs, Dr. Davis, and Dr. Tatum had testified, as we have substantially stated above, appellees called to the witness stand Hon. J. D. Campbell, who was then judge of the corporation court of the city of Beaumont, for the purpose of proving by him the good general reputation of Mrs. Jones for truth and veracity. Counsel for appellants objected to such proof, for the reason that appellants had made no attack upon Mrs. Jones' reputation for truth and veracity, and had made no attempt to impeach her in any way, but had only offered testimony, as they had a right to do, in contradiction of Mrs. Jones' testimony touching the extent of the injuries that she claimed to have received in appellants' store. The court overruled this objection, and the witness Campbell testified, in substance, that he had known Mrs. Jones for a period of four or five years, and that she was a member for about three years of that time of his (witness') Sunday school class in the city of Beaumont, and that she was a regular attendant upon his Sunday school class, and further that he knew Mrs. Jones' general reputation in the community in which she lived for truth and veracity, and that it was good.

Appellees next called W. H. Campbell, a son of Judge Campbell, and this witness testified that he had known Mrs. Jones six or seven years, and that he knew her general reputation in the community in which she had lived for truth and veracity, and that it was good. Objection was made by appellants to the testimony of this witness, on the ground that appellants had not attacked Mrs. Jones' general reputation for truth and veracity, and had made no assault upon her by any mode of impeachment, and that therefore the testimony was wholly immaterial and irrelevant to any issue in the case, and was highly prejudicial to appellants. This objection was also overruled by the trial court, and the testimony given by the witness went to the jury. This action of the court is made the basis of the only assignment of error in this court. We sustain the assignment, and must reverse the trial court's judgment.

[2] We understand that it is the rule in this state that mere contradiction between witnesses, however sharp the contradiction may be, will not authorize the introduction of evidence showing the good reputation for truth and veracity of witnesses, and this rule applies to parties when they become witnesses. Railway Co. v. Raney, 86 Tex. 363, 25 S. W. 11; Adams v. Railway Co. (Tex. Civ. App.) 122 S. W. 895; McCowen v. Railway Co. (Tex. Civ. App.) 73 S. W. 46.

If this were not so, the trial of causes involving disputed fact issues would frequently be turned into an inquiry touching the reputation of witnesses for truth and veracity, and the real and determinative issues of fact would likely be lost sight of or greatly obscured. Until reputation of a witness for truth and veracity is directly attacked or impeached, it is presumed to be good, and therefore evidence to aid the presumption

is wholly unnecessary and immaterial and irrelevant to any issue in the case.

In Jones on Evidence, § 148, the author says:

"However just the inference, which might in many cases be drawn as to the merits of the controversy from the character of the parties, such inferences are too vague and unreliable for that degree of certainty which should prevail in legal tribunals. If in all cases of contracts and torts such evidence were to be received, the result would be more dependent on the popularity of the party than on its merits. The testimony would consist largely of matters of opinion, and be greatly affected by bias and partisanship, and would cause intolerable delay and expense."

This language of the author was quoted with approval by our San Antonio Court of Civil Appeals, speaking through Judge Neill, in Houston Electric Co. v. Jones, 61 Tex. Civ. App. 281, 129 S. W. 863.

Of course, either party to a suit may attack the credibility of any one or more witnesses of his adversary, as well as that of the adversary himself, when he becomes a witness, and this he may do by proof showing that the general reputation of the witness in the community in which he lives for truth and veracity is bad, or by proof that the witness has made out of court statements contradictory to those made by him on the stand. Indeed, a party may use both such modes of impeachment, and either would constitute a direct attack on the credibility of the witness, and would authorize the party introducing him to sustain his credibility by proof of good general reputation. But, in the absence of any such attack, the general rule in this state is that neither party to a civil action can "bolster up" the testimony of himself or witnesses by proof of good general reputation. We think that it will be found, upon careful examination of all authorities in this state, that mere contradiction between witnesses will not authorize either party to a civil action to sustain a witness by proof of general reputation. Counsel for appellees have cited in their brief several cases decided by courts of civil appeals in this state which they claim support their contention here, that it was permissible to sustain Mrs. Jones wherein she was contradicted by appellants' witnesses by proof of her good general reputation. We have read all these cases, but in our opinion each can be distinguished by reason of the fact that in each of them some nature of attack other than mere contradiction was made upon the credibility of the witness sought to be sustained, such as by showing former statements contradictory to those made by him upon the stand, or some other

fact or circumstance tending to reflect upon the character of the witness and discredit him before the jury. We have no doubt that none of the exceptions to the general rule apply in this case. Here no attempt whatever was made by appellants to impeach or reflect upon the credibility of Mrs. Jones any further than to show, as appellants had a right to do, that the ailments or physical infirmities which she claimed were the result of injuries received in appellants' store were not, in fact, the result of any such injury, but that, in fact, Mrs. Jones suffered these very ailments or physical infirmities long prior to such claimed injuries, and that therefore appellants were not liable to her in damages for such ailments or physical infirmities. Appellants were not claiming that Mrs. Jones did not have the physical ailments or infirmities that she claimed to have, but only that they were not responsible for this condition. All the evidence introduced by appellants in contradiction of Mrs. Jones on this point was admissible under the general issue as original evidence in their behalf, and the court was clearly in error in permitting proof, over appellants' objection, showing the good general reputation of Mrs. Jones, merely because she had been contradicted upon this vital issue in the case.

[3] The only remaining question in this connection is whether the admission of this evidence, over appellants' objection, was calculated to prejudice, and probably did prejudice, the rights of appellants upon the trial. The contradiction between Mrs. Jones and her husband on one side, and Mrs. Myers and Mrs. Gammage and Mrs. Childs on the other, to say nothing about the testimony of Dr. Tatum, touching the condition of Mrs. Jones' health prior to the claimed injury, was very sharp, as we have shown. If the jury had believed the testimony of appellants' witnesses in that connection, they would have been compelled, it seems to us, to have concluded that the physical infirmities and ailments of which Mrs. Jones was complaining, and for which she was seeking to hold appellants responsible, existed prior to the claimed injury, and that, if she received, in fact, any injury in appellants' store, as claimed by her, it must have been very slight. We think that in view of the sharp conflict between Mrs. Jones and her husband and appellants' witnesses, touching the nature and extent of Mrs. Jones' injuries, the admission of the testimony complained of by appellant to sustain Mrs. Jones was calculated to prejudice, and probably did not result in prejudice, to appellants' rights upon the trial. We therefore have concluded that the judgment must be reversed and the cause remanded for another trial, and it has been so ordered.