## JENKINS et al. v. PURE OIL CO.
### No. 11035.

Court of Civil Appeals of Texas. Dallas.

Oct. 1, 1932.

Lightfoot & Robertson, of Fort Worth, A. A. Dawson, of Canton, and Saner, Saner & Jack, of Dallas, for appellants.

Vinson, Elkins, Sweeton & Weems and David T. Searls, all of Houston, for appellee.

VAUGHAN, J.

This is an appeal prosecuted by Wallace Jenkins, Roy Jenkins, Myer Rabinowitz, M. E. Davis, and Mrs. Nettie Davis, as appellants, from a judgment rendered on February 14, 1931, in favor of the Pure Oil Company, a private corporation, appellee, against appellants and V. T. Davis, Mary Davis, and R. O. Wylie, defendants. Appellee pleaded the usual action of trespass to try title, and in addition thereto alleged that on June 9, 1927, V. T. Davis and wife, Mary Davis, executed an oil, gas, and mineral lease in favor

of one E. G. Lewis, conveying, in fee simple, oil, gas, and mineral, except a one-eighth royalty in, on, and under 199.8 acres of land in Van Zandt county, Tex., except ten acres sold to W. V. Slaton, and 50 acres sold to M. E. Davis, said tract of land being duly described by field notes; that said Lewis assigned said lease to appellee; that the appellants Roy Jenkins, Wallace Jenkins, and Myer Rabinowitz obtained an oil lease from appellants M. E. Davis and wife, Nettie Davis, covering 66 acres of land out of the 199.8 acre tract, and were attempting to drill a well thereon, and prayed for a writ of injunction restraining appellants from drilling on said land, and for judgment canceling the lease and any claim of the appellants in and to the land. Appellants filed their motion to dissolve said writ of injunction, which was heard and granted by the court on July 10, 1930.

By their second amended original answer, appellants, in addition to a general demurrer, certain special exceptions, general denial, and plea of not guilty, alleged that they had developed said 66-acre tract for mineral purposes, acting in good faith, and believing they had good and valid title thereto, and had made permanent and valuable improvements on said 66 acres of land, completing an oil well thereon, and equipping the same at a reasonable cost. The improvements so claimed to have been made were specified, with the aggregate costs thereof alleged to be the sum of $32,250. They prayed in the alternative that they have judgment for the improvements so made in good faith. The defendants V. T. Davis and Mary Davis filed their answer disclaiming any interest in the 66 acres of land involved in this suit, or to the mineral right in, on, or under said land, and alleged that they did not own the land in controversy on June 9, 1927, when they executed and delivered the oil and gas lease; that such acreage was included in the lease to E. G. Lewis through error, and that since the discovery of said error they had refused to accept rentals covering said 66 acres, and had tendered back the nominal amount so received.

The evidence, without dispute, established the following facts, viz.: That on November 1, 1920, V. T. Davis and wife, Mary Davis, being the owners of the 199.8 acres of land described in the field notes in the mineral lease executed by them to E. G. Lewis, conveyed to their son, appellant M. E. Davis, the involved 66-acre tract out of said original tract, as shown by their deed of that date, which had been duly recorded prior to the execution of the mineral lease to Lewis. To sustain its cause of action, appellee assumed the position that on October 6, 1926, appellants M. E. Davis and wife, Nettie Davis, executed a deed to said V. T. Davis, reconveying to him said 66 acres of land, whereby V. T. Davis became and was the owner of the entire tract

when the oil and gas lease was executed by himself and wife to Lewis on June 9, 1927.

Appellants countered said contention by claiming that no such deed reconveying said 66 acres of land to V. T. Davis was ever executed, acknowledged, or delivered, but, on the contrary, that appellants M. E. Davis and wife, Nettie Davis, remained the owners of said 66-acre tract of land at all times after the execution of the deed by V. T. Davis and wife to said M. E. Davis in 1920. The appellants Roy Jenkins and Wallace Jenkins also sought, in the alternative, to recover the value of the improvements made by them on said land whereby and on account thereof the value of the mineral lease on, as well as the value of the involved land, was enhanced by reason of the drilling and completing of a producing oil well upon said land, as alleged by them.

Following are, in effect, the special issues submitted and answers made thereto by the jury:

(1) That M. E. Davis and wife on or about October 6, 1926, signed and acknowledged a deed of conveyance to V. T. Davis covering the 66 acres of land in controversy.

(2) That M. E. Davis and wife on or about said date delivered said deed to said V. T. Davis.

(3) That Roy Jenkins and Wallace Jenkins, acting in good faith and under an honest and reasonable belief that they had good title to the leasehold, drilled and equipped an oil well on said tract of land.

(4) That the reasonable cost of drilling said well was $15,000.

(5) That the reasonable cost of the necessary equipment of said oil well was $7,500.

(6) That the reasonable value of the well equipment which could be moved without injury or damage to the well and its operation was $7,500.

(7) That the value of the mineral lease on the 66 acres immediately before the drilling and equipping of the well thereon was $400 per acre.

(8) That the value of the mineral lease after the drilling and equipping of the well was $1,000 per acre.

Appellee and appellants respectively moved for judgment on said verdict. The court sustained appellee's motion, and entered judgment in its favor against all of the adverse parties to the suit, vesting in it title and possession of the oil, gas, and mineral estate, except one-eighth royalty, in and to the involved 66-acre tract, and further provided that appellants recover nothing of appellee by reason of their plea of improvements in good faith, and accorded to appellants the right to go upon said tract and remove the equipment placed thereon by them.

It is contended by appellants that the

court erred in not dismissing appellee's suit, on the ground that it failed to introduce proof showing that a permit to do business in the state of Texas had been issued to it as a foreign corporation, or that a permit had been issued to it to establish a general or special office in the state.

In its first amended original petition, appellee alleged: "That plaintiff is a foreign corporation, organized under and by virtue of the laws of the State of Ohio, having a permit to do business in the State of Texas, duly issued to it under and by virtue of the laws of said State, and with its home office and principal place of business in said State in the City of Fort Worth, Tarrant County," and also alleged that it owned the oil and gas lease in controversy, was in possession of the same, and that the defendants unlawfully dispossessed it of the premises; that V. T. Davis and wife executed the oil and gas lease in question to E. G. Lewis; that E. G. Lewis assigned said lease to appellee, which assignment was filed for record in the office of the county clerk of Van Zandt county, Tex.; that by virtue of said assignment appellee became, and is, the owner of the oil and gas lease referred to, and is now, and has been continuously since the time of said assignment, in possession of said lease; that it has satisfactorily performed all of said obligations of said lease contract, including the payment of rentals as and when due. Appellants' answer included a general denial. A careful inspection of the statement of facts failed to show that appellee introduced any evidence to establish that a permit authorizing it to do business in the state of Texas, or to establish a general or special office in said state. had been issued, as alleged. Appellants, in due time and form, requested the court to instruct the jury to return a verdict for the defendants, which was refused. In their motion for a new trial, appellants pointed out as error the failure of appellee to prove that it had a permit authorizing it to do business in the state of Texas, or to establish a general or special office in said state.

■ P. R. Smith, witness for appellee, testified in its behalf as follows, viz.: That he lived in Fort Worth, Tex., and was connected with the Pure Oil Company as assistant manager of the Texas production division, and had general supervision of all its producing properties and lands in Texas; that appellee owned and operated a number of producing oil wells in the Van oil field in Van Zandt county, Tex., near the land in controversy. Under the following authorities this proposition must be sustained: Articles 1529 and 1536, R. C. S. 1925; 11 Tex. Jur. 185, § 506; Taber v. Interstate Bldg. & Loan Ass'n, 91 Tex. 92, 40 S. W. 954; Victor Refining Co. v. City Nat. Bank of Commerce (Tex. Civ. App.) 263 S. W. 622; Stanard v. Cantwell (Tex. Civ. App.) 286 S. W. 760; First State Bank v. Janellen Oil Co. (Tex. Civ. App.) 275 S. W. 210; Turner v. National Cotton Co., 50 Tex. Civ. App. 468, 109 S. W. 1112; Oklahoma Tool & Supply Co. v. Daniels et al. (Tex. Com. App.) 290 S. W. 727, 728; General Motors Acceptance Corp. v. McCracken (Tex. Civ. App.) 48 S.W.(2d) 480.

Appellee attempts to distinguish the Taber Case, supra, by stating facts in that case indicating the contract was executed in Texas, and therefore should be distinguished from the instant case. If the case at bar should be determined by what the evidence shows, rather than by the allegations of appellee's petition, then it must be apparent that the fact that the evidence offered by appellee established that it was at the time in question, and is now, engaged in operating and drilling numerous oil wells in the Van oil field in Texas; that it has its office in Fort Worth, Tex., and also various offices and agencies in Van Zandt county, Tex., as well as various other facts indicating that it was conducting and is conducting intrastate business in Texas, as well as having its office and agency located therein; that the Taber Case is even more directly in point in determining the instant case in favor of appellants' position than when judged on the basis of the pleadings alone. The conclusion is therefore inevitable that appellee's failure to prove that it had a permit authorizing it to transact business in Texas, or to establish an office in Texas, prohibited judgment from being entered in its favor. The provisions of article 1529, supra, not only require a foreign corporation to have a permit to transact intrastate business in this state, but also such permit where a foreign corporation establishes a general or special office in this state. The distinction is thus pointed out in the case of Oklahoma Tool & Supply Co. v. Daniels et al., supra, viz.: "It is thus seen that no foreign corporation is required to take out a permit from our secretary of state, except one who desires 'to transact or solicit business' in this state, or to establish an office here."

■ Appellants' second proposition refers to the action of the trial court in permitting appellee to prove by nine witnesses the good reputation of its witness, W. H. Cook, for honesty and fair dealing, and for truth and veracity. The witness Cook was offered by appellee in its attempt to prove that on October 6, 1926, appellants M. E. Davis and wife, Nettie Davis, acknowledged before him, as a notary public of Van Zandt county, a deed in favor of defendant V. T. Davis, conveying to him the 66-acre tract of land in controversy. The main question involved in this case being whether or not appellants M. E. Davis and wife, Nettie Davis, executed and acknowledged a deed conveying the involved 66 acres to V. T. Davis; the testimony of

said witness Cook became very material to appellee upon this issue. No such 'deed was ever filed for record, or its existence at the time of the trial established. Appellee, in its effort to show that such a deed was duly executed and delivered, introduced the notary's record of and kept by the witness Cook, viz., the entry made therein showing that on October 6, 1926, M. E. Davis and wife, Nettie Davis, executed a deed to V. T. Davis, to land in school survey No. 620 in Van Zandt county. The acreage or other details of description of the property conveyed were not shown by the entry made in said record. Cook testified that he relied largely upon the record in his book; that he had no independent recollection as to the terms, conditions, description of the property, or other provision of the deed referred to in his record; that he did remember the occasion of M. E. Davis and wife and V. T. Davis and wife coming over to his house to sign some papers. To the contrary, both M. E. Davis and wife, Nettie Davis, testified positively that they did not execute and acknowledge a deed conveying the 66 acres in controversy to V. T. Davis before said W. H. Cook, as a notary. In this situation, the question of accuracy of the entry made by W. H. Cook in his notary record, so offered in evidence, became very material. His testimony was that he made the entry a few days after the date thereof, as contained in said record. From the face of said record, viz., the entry of other acknowledgments made before said Cook, it appears that the dates of other instruments acknowledged before him were not in consecutive order, which said witness attempted to explain by saying that he had changed the method of entering the various records of acknowledgments taken by him. Of the situation thus presented upon this vital issue, the question of whether the witness Cook made the entry in his record book at the date of the purported acknowledgments, or whether he made such entries a month, three months, a year, or three years later, logically became vitally important. In this connection and bearing upon the situation thus produced, it is but reasonable to assume that appellants offered the testimony of W. A. Weaver, a handwriting expert, who testified that, at the request of appellants, on August 27, 1930, he examined the entry contained in said notary record purporting to contain the record of the acknowledgment of a deed executed by M. E. Davis and wife, Nettie Davis, to V. T. Davis under date of October 6, 1926, and that in his opinion the writing constituting the record of the acknowledgment of said deed, as entered in said notary's record, had not been on the paper more than three months at the time he made his examination thereof. The testimony of the witness Weaver bore upon and had reference to the question of when the entries were ac-

tually made in the notary's record, and hence upon the accuracy with which the entries may have been made in said notary's record.

A careful examination of the statement of facts failed to show that appellants in any manner attacked or attempted to impeach the witness Cook as to his reputation for truth and veracity, or for honesty and fair dealing. Under the evidence, there was merely a contradiction as to the facts herein referred to. It doth now appear to be well settled that, under the above facts, the appellee should not have been permitted to bolster up the testimony of its witness Cook by proof of good reputation for truth and veracity, or for honesty and fair dealing. Such we understand to be the holding in Missouri, K. & T. Ry. Co. v. Williams, 63 Tex. Civ. App. 368, 133 S. W. 499, 501, opinion delivered for this court by Chief Justice Rainey, viz.: "Testimony offered to sustain the good character of a witness for truth and veracity is not admissible unless an attempt has been made by the opposite side to impeach such character. Every witness is presumed to be truthful until the contrary is shown, and the contradiction of a witness by other witnesses testifying differently is not such an attack upon the character for truth and veracity as authorizes the introduction of testimony sustaining the general character for truth and veracity."

To the same effect are the holdings in the following cases, viz.: Gulf, C. & S. F. Ry. Co. v. Younger (Tex. Civ. App.) 40 S. W. 423; Houston Electric Co. v. Jones, 61 Tex. Civ. App. 281, 129 S. W. 863; Jones-O'Neal Furniture Co. v. Jones (Tex. Civ. App.) 269 S. W. 180; Blumrosen v. Burke (Tex. Civ. App.) 296 S. W. 987; New Amsterdam Co. v. Parham (Tex. Civ. App.) 2 S.W.(2d) 866; Shell Pipe Line Corp. v. Coston (Tex. Civ. App.) 35 S.W.(2d) 1056. In Jones on Evidence (2d Ed.) § 868, it is said: "Although the contradiction in his statements may tend to show that he ought not to be believed in the particular case, this does not necessarily touch his general good character for truth or integrity, since the inconsistency may be the result of mistake or forgetfulness. On the same principle, and for still stronger reasons, it is no ground for the introduction of evidence to sustain the character of a witness that other witnesses have contradicted him by testifying to a different state of facts, and this remains true, although the contradiction is of such a character as to incidentally impute immorality or crime."

That some of the opinions of our appellate courts are in conflict with the holdings in the above authorities must be conceded; yet whatever 'confusion that existed in our decisions with reference to the point here discussed, the same is conclusively determined and the correct rule announced in the recent

case of Grant et al. v. Pendley et al. (Tex. Com. App. Sec. B) 39 S.W.(2d) 596, 78 A. L. R. 638, the opinion being delivered by Judge Leddy, from which we make the following quotation: "The authorities on the question as to permitting supporting evidence of general reputation for honesty and fair dealing and truth and veracity by a party in a civil case, where his adversary has by pleadings and evidence charged him with the commission of a crime involving moral turpitude or the perpetration of an intentional fraud, are somewhat in conflict. The overwhelming weight of authority, however, denies the right to introduce this character of evidence in any civil action except where the character of a party by the nature of the action is squarely at issue, or where it is offered for the purpose of supporting the testimony of a witness who has been directly impeached. As the question is one of considerable importance, it may be well to briefly examine the pronouncement of the leading text-writers and authorities upon this subject." (Authorities examined omitted.) "It is a far safer rule that controversies between citizens should be decided upon facts having a direct bearing upon the issues between them rather than upon mere opinions of partisan friends as to the relative standing of the parties to the litigation. We therefore announce the rule to be that supporting evidence of good character, either for truth and veracity or honesty and fair dealing, should only be admitted in those cases where the nature of the action directly involves the character of a party, where a witness has been impeached, or where a party by his pleading or evidence charges his adversary with the commission of a crime involving moral turpitude."

The words "directly impeached," in our opinion, has reference to and only embraces the idea of impeaching a witness where (a) the adverse party has introduced evidence of contradictory statements of a witness made outside of the trial, or (b) proof to the effect that his general reputation for truth and veracity, or for honesty and fair dealing, was bad; for in no other way can we conceive how the reputation of a witness may be directly attacked by the adverse party, as mere contradictory statements, nor even such as may be of the character to in any measure import immorality or crime, will not necessarily touch the general good character of a witness for truth and veracity, or honesty and fair dealing.

It is evident that the facts in the present case do not bring it within the rule announced in Grant v. Pendley, supra. Appellants did not, by their pleadings or evidence, charge the appellee or its witness Cook with the commission of a crime involving moral turpitude; therefore, the only possible condition under which such supporting testimony could be offered would have resulted, if the appellants had directly attacked and impeached the witness Cook, in one of the methods above designated. This condition was not created by the testimony of the witness Weaver, introduced by appellants to contradict or discredit the testimony of said Cook. The bolstering up of Cook's testimony by proof of his reputation for truth and veracity, honesty and fair dealing, by nine witnesses was, we think, very harmful to the appellants, in that it is apparent that the introduction of said testimony of and to the good reputation of witness Cook, who had not been impeached by appellants, evidently confused the jurors to such an extent that they considered and passed upon such collateral matter, rather than the material issue and facts bearing thereon before them. Therefore this assignment is sustained.

By its third proposition, appellants contend that the court erred in refusing to peremptorily instruct the jury to find in their favor, on the ground that the evidence was not sufficient to require the submission of an issue as to whether or not appellants M. E. and Nettie Davis executed and acknowledged a deed in favor of V. T. Davis, reconveying the 66 acres of land in controversy; and by their fourth proposition present the contention that the trial court erred in not setting aside the finding of the jury that such deed was so executed and acknowledged, as being against the overwhelming weight of the evidence. We have carefully considered the entire record bearing upon all issues presented by this appeal, especially the two propositions under discussion, and have reached the conclusion that the evidence, considered as a whole, was sufficient to require submission of the issue as to the execution of said deed, as well as to warrant the court in overruling that ground of appellants' motion for a new trial that challenged the sufficiency of the evidence to sustain the finding of the jury on the issue submitted as to the execution of the deed by appellants M. E. and Nettie Davis to V. T. Davis, conveying the involved tract of land. In view of the fact that this case must be reversed and remanded for further proceedings, we refrain from further discussing the probative effect of the evidence. Nevertheless, as being peculiarly applicable to the facts of the instant case, we feel constrained to call attention to the following rule of law as to the character and weight of evidence that should be adduced to prove the execution of a deed of conveyance to real estate: "The execution and delivery of a deed may be proved by circumstantial evidence, but the circumstances must be of such a convincing and cogent nature as to produce actual conviction. Bounds v. Little, 75 Tex. 316, 12 S. W. 1109; Walker v. Caradine, 78 Tex. 489, 15 S. W. 31. The deed in question, from Cohn to Harmon, had no

sanctity, or presumption of execution, given it by lapse of time, but it comes as a deed executed a few years since and never mentioned until P. Cohn's lips were closed in death. Great caution should be exercised in weighing evidence of the execution of a deed of which there is nothing but circumstance upon which to depend. Proof of deeds under such circumstances offers too rich a field for fraud and deception." Silverman et al. v. Ponce (Tex. Civ. App.) 268 S. W. 497, 498. To the same effect is the holding in the case of Massie v. Hutcheson et al. (Tex. Civ. App.) 258 S. W. 244. In 38 C. J. § 24, the general rule is stated, viz.: " * * * The evidence of the former existence, execution, delivery, loss and contents of the lost instrument should be clear and convincing, or at least preponderating. The rule applies with especial force when it is sought to establish a lost instrument as a muniment of title. * * * "

Appellants, by their seventh proposition, present for review as reversible error the refusal of the trial court to enter judgment in their favor against appellee for improvements made in good faith on the involved tract of land under the findings of the jury. In view of another trial of this cause, we are called upon to announce our views anent the correct rule of law applicable to the phase of the case now under discussion.

Appellee contends that the trial court properly refused to render judgment on the findings of the jury in favor of appellants on this branch of the case, on the ground that the drilling of the well did not constitute a permanent improvement, as the casing and other equipment constituted personal property and could be removed; and, further, that appellants did not act in good faith because they drilled the well at a time when they knew the suit was pending.

In addition to the above, and for the first time, appellee presented on this appeal the additional question, viz., that appellants are not entitled to recover for improvements made by them in good faith on the mineral lease by reason of the fact that appellants' pleadings were not sufficient to justify the awarding of such equitable relief.

As to this feature of the case, appellee, in support of its position, urges that the pleadings of appellants only based their grounds for relief, as to improvements made in good faith, upon the provisions of the trespass to try title statute, viz., articles 7393 and 7394, R. S. 1925. This contention places appellee in the position of contending that it brought its suit merely in trespass to try title, and that the appellants, in reply and answer thereto, sought to recover for the improvements claimed to have been made, under the terms of the trespass to try title suit.

What of the status of appellee's pleadings?

This becomes a material inquiry. Appellee's petition, in addition to containing a count in the usual form of trespass to try title, contains another count in which it expressly alleges that it is claiming under a lease executed by V. T. Davis and wife; that appellants, claiming under a lease executed by M. E. Davis, had entered into a conspiracy to fraudulently deprive appellee of the benefit of the oil, gas, and minerals of the said land; that "plaintiff had no adequate remedy and must resort to the equity powers of this court for the conservation of its property and property rights"; that appellee is entitled to an injunction restraining appellants from going upon the land, or removing the minerals therefrom; and that the claim of the appellants has cast a cloud upon appellee's title to said lease; and that appellee is entitled to have the cloud removed and to have the purported lease under which appellants claim canceled and held for naught. Appellee prayed for a temporary writ of injunction, that same be made perpetual, for judgment removing cloud cast upon its title, for cancellation of lease executed by M. E. Davis, under which appellants claimed, for title and possession of the mineral estate.

It is clear from the above allegations that appellee's petition was not only in trespass to try title, but, in addition, was an equitable proceeding for cancellation of appellants' lease, to remove cloud from title, and for temporary and perpetual injunction. Therefore appellants' right to recover on their claim of improvements in good faith does not rest upon, nor is confined to, the statutory requirements of articles 7393–7401, R. C. S. of 1925, providing for the recovery of the value of improvements made in good faith in an action of trespass to try title; this, because aside from said statute and in addition thereto, the case, as presented by the parties hereto, would authorize, under proof sustaining same, appellants to recover judgment against the appellee for improvements made in good faith, and enhancing the value of its mineral lease of the involved 66 acres of land on general equitable principles. Mulholland v. Jolly et al. (Tex. Civ. App.) 17 S.W.(2d) 1109, 1111, in this case the court held:

"He [the plaintiff] was seeking equitable relief, and, in order to obtain it, was compelled to do equity by paying for the permanent improvements and refunding amounts paid to protect the title to the land.

"This equitable principle is thus stated in Pomeroy, Equity Jurisprudence, § 1241: 'The right to a contribution or reimbursement from the owner, and the equitable lien on the property benefited as a security therefor, have been extended to other cases where a party innocently and in good faith, though under a mistake as to the true condition of the title, makes improvements or repairs or other ex-

penditures which permanently increase the value of the property, so that the real owner when he seeks the aid of equity to establish his right to the property itself, or to enforce some equitable claim upon it, having been substantially benefited, is required, upon principles of justice and equity, to repay the amount expended.' The text is supported by quite an array of decisions cited in footnote.

* * *

"The rule laid down by Pomeroy has been followed at all times by the courts of Texas. Sartain v. Hamilton, 12 Tex. 219, 62 Am. Dec. 524; Dorn v. Dunham, 24 Tex. 366; Saunders v. Wilson, 19 Tex. 200; Hill v. Spear, 48 Tex. 583; French v. Grenet, 57 Tex. 273; Van Zandt v. Brantley, 16 Tex. Civ. App. 420, 42 S. W. 617."

█ The contention on the part of appellee, that the drilling of the well did not constitute a permanent improvement, under the facts of this case, cannot be sustained. In the case of Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, 171, Ann. Cas. 1913A, 559, we find the following rule of law announced by Justice Brown, speaking for the court: "The law will determine the rights of the parties, but equity will adjust the account between them upon the doctrine which applies to innocent purchasers in good faith who make improvements upon land which adds to its value. The owner gets his property, and the innocent occupant is remunerated for his labor and money expended in making the improvements." To the same effect is the holding in the following cases, namely: Right of Way Oil Co. et al. v. Gladys City Oil, Gas & Mfg. Co. et al., 106 Tex. 94, 157 S. W. 737, 51 L. R. A. (N. S.) 268; Gilmore et al. v. O'Neil et al. (Tex. Civ. App.) 139 S. W. 1162; Taylor v. Higgins Oil & Fuel Co. (Tex. Civ. App.) 2 S. W.(2d) 288.

█ As to appellee's contention that appellants did not and could not have acted in good faith in placing the improvements on the involved tract of land, as alleged by them, because they drilled the well on the 66-acre tract of land at a time when they knew that appellee's suit was pending against them, we do not think, under the facts of this case, authorized the denial of a recovery by appellants under the findings of the jury on the issue submitted, in reference to the improvements so claimed to have been made. This, because in support of their plea of improvements in good faith, appellants offered testimony, which we will not here in detail discuss, that clearly raised the issue in their favor, namely: That they honestly believed that the title asserted by them was superior to that claimed by appellee; further, that they knew of every fact affecting their record title as well as that of appellee's; also of the rights asserted by appellee resting in parole, as testified to at the hearing to dissolve the temporary writ of injunction. From this, taken in connection with other probative circumstances not necessary here to be reviewed and apparent from the statement of facts before us, the conclusion may readily be drawn that the contention of appellants upon this issue of having made the improvements claimed by them in good faith "rests upon the sole ground that they honestly misjudged the law," this notwithstanding appellants had knowledge before the making of such improvements that appellee had asserted its adverse title by the filing of this suit. Houston Prod. Co. v. Mecom Oil Co. (Tex. Civ. App.) 22 S.W.(2d) 973; Taylor v. Higgins Oil & Fuel Co., supra.

Because of the material errors herein set out, the judgment of the court below is reversed and remanded for another trial.

Reversed and remanded.